FILED
CLERK

November 18, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

6340 NB LLC,

                    Plaintiff,

      -against-

CAPITAL ONE, N.A.,

                    Defendant.

------------------------------------------------------------X

**MEMORANDUM ORDER**

20-CV-02500 (JMA)(JMW)

**A P P E A R A N C E S:**

Ronald J. Rosenberg
John S. Ciulla
Joshua Marc Liebman
Kenneth E. Aneser
Peter Williams
William J. Birney
**Rosenberg Calica & Birney LLP**
100 Garden City Plaza, Suite 408
Garden City, NY 11530
*For Plaintiff 6340 NB LLC*

Adam Kirschbaum
James Wilson Perkins
Michelle D Gambino
Michael Hass
Michael Patrick Manning
Shirin Afsous
**Greenberg Traurig, P.A**
One Vanderbilt Avenue
New York, NY 10017
*For Defendant Capital One, N.A.*

**WICKS,** Magistrate Judge:

       Before the Court is Defendant Capital One, N.A.'s ("Capital One") motion to compel

Plaintiff 6340 NB LLC ("6340 NB") to produce allegedly critical zoning documents and

communications by and between attorneys Kevin Walsh ("Walsh") and Laura Schaefer

("Schafer") of the firm Walsh Markus McDougal & DeBellis LLP ("WMMD") in response to Document Request Nos. 9, 30-36, 39-42, 45-46, 73 and 75, over 6340 NB's objections on various privilege grounds.  (DE 94.)  Oral argument was held on the motion on November 14, 2022.  (DE 118.)  For the reasons that follow, Capital One's motion to compel documents is hereby DENIED.

## RELEVANT BACKGROUND

The Court and the parties are well versed in the underlying facts and allegations of this case from prior orders which do not bear repeating here.

Relevant here is that pursuant to a 2017 Ground Lease and its subsequent amendments, 6340 NB was to acquire and rezone two residential parcels in order to construct a Capital One bank branch (the "Property").  (DE 42 at ¶¶ 14-22.)  In order to obtain zoning approval, 6340 NB required Capital One's cooperation to provide certain plans and specifications for the anticipated branch.  (*Id.* at ¶ 18.)  After several extensions of deadlines, which 6340 NB alleges is at the hands of Capital One, on July 24, 2019, 6340 NB finally filed the requisite zoning application. (*Id.* at ¶¶ 26-28.)  A public hearing was held before the Town Board of the Town of North Hempstead on December 17, 2019.  (*Id.*)  Capital One contends that the Town would not agree to the rezoning (*see* DE 94), but 6340 NB alleges progress was made during the hearing and the Town was generally supportive.  (*See* DE 42 at ¶ 28.)  Nonetheless, just over a month later, on January 31, 2020, Capital One served a Notice of Termination of the Ground Lease for 6340 NB's failure to timely perform its obligations under the Ground lease ("Termination Notice). (*Id.* at ¶ 31.)  6340 NB contends that this Termination Notice was wrongful and an act of anticipatory repudiation because 6340 NB was well within the deadlines set in an amendment to the Ground Lease.  (*Id.* at ¶ 33.)  In an effort to keep the deal alive, 6340 NB asked Capital One

to withdraw the Termination Notice, and in an email to Capital One's counsel, stated: "We are ready willing and able to proceed but to do so require that Capital One withdraw the termination." (*Id.* at ¶ 38.) Capital One did not withdraw the Termination notice and thus 6340 NB commenced this action to recover damages based on Capital One's alleged breach of contract and anticipatory repudiation of a Ground Lease and its subsequent amendments. (*See* DE 42.) Capital One has counterclaimed against 6340 NB alleging fraud and breach of contract in connection with 6340 NB's alleged failure to perform under the Ground Lease. (*See* DE 89.)

## DISCUSSION

In 2018, attorneys Walsh and Schaefer of WMMD were engaged to facilitate the zoning approval necessary under the Ground Lease. The threshold question is, however: *engaged by whom?* The question of whether Capital One is entitled to the documents it seeks necessarily turns on whether Walsh and Schaefer were attorneys for 6340 NB, Capital One, or both.

Capital One seeks to compel 6340 NB to produce documents in response to sixteen document requests concerning 6340 NB's efforts to rezone the Property. (*See* DE 94-1.) In response to those discovery requests, 6340 NB has withheld various emails from dates ranging from November 29, 2017, through March 31, 2022, based on the attorney-client and work product privileges, and has produce a corresponding privilege log ("Walsh/Schaefer Emails"). (DE 94-2.)[1] Capital One argues it is entitled to the Walsh/Schaefer Emails because (1) no privilege exists as to communications involving Walsh and Schaefer because Walsh and Schaefer were acting as attorneys for both 6340 NB and Capital One with respect to the zoning approval; (2) 6340 NB has put the issues surrounding rezoning at issue by claiming that it was

---

[1] During oral argument, counsel for 6340 NB estimated that it was withholding less than 100 emails. Further, to the extent the privilege log also references emails of Katrine A. Beck of Fullerton Beck LLP counsel for Capital One confirmed that it is not seeking to compel those withheld emails, but rather only the WMMD emails.

"ready willing and able" to perform under the Ground Lease; (3) the documents are not protected

under the work product doctrine because they were not prepared in anticipation of litigation and

Capital One has otherwise demonstrated a substantial need for those documents; and (4) Walsh

and Schaefer were hired for a business purpose and the sought after materials are factual in

nature, not legal.  (DE 94.)  Capital One further requests that to the extent the Court a privilege to

the exclusion of Capital One exists, that the Court conduct an *in-camera* review to ensure all

non-privileged material is produced.  (*Id.*)

In opposition, 6340 NB argues that the Walsh/Schaefer Emails are protected by the

attorney-client privilege because WMMD did not jointly represent 6340 NB and Capital One and

because 6340 NB has not put these communications at issue.  (DE 99.)  6340 NB further contests

the need for an *in-camera* review.  (*Id.*)

## A. *Did Walsh and Shaefer Represent Both 6340 NB and Capital One?*

Capital One argues that no privilege exists as to the Walsh and Schafer emails because

WMMD acted as Capital One's attorney in all aspects of the legal work done on the rezoning.

(DE 94; DE 108.)  Capital One relies on two related but distinct doctrines and at times seems to

conflate the two: (1) the common-interest doctrine; and (2) the joint-client exception.  (*See id.*)

In response, 6340 NB argues that the Walsh/Schaefer Emails are subject to the attorney-client

privilege because WMMD did not jointly represent 6340 NB and Capital One.  (DE 100-2; DE

107; DE 113.)

i.  **Common-Interest Doctrine**[2]

Typically, when a communication between a client and an attorney is shared in the presence of a third party, the attorney-client privilege is waived.  *Schultz v. Milhorat*, No. CV 10-103 (AKT), 2011 WL 13305347, at *2 (E.D.N.Y. Apr. 11, 2011).  The common-interest doctrine functions to extend the attorney-client privilege and prevent waiver when an otherwise privileged communication is disclosed to a third party.  *Id.*  (common-interest privilege "acts as an exception to these general waiver rules in order to facilitate cooperative efforts among parties who share common interests"); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties LLC*, No. 01 CIV. 9291 (JSM), 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002) ("The common interest privilege is a limited exception to the general rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party").  The purpose of the common-interest doctrine is to "protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."  *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015).  The doctrine "applies where parties are represented by separate counsel but engaged in a common legal enterprise." *Fresh Del Monte Produce, Inc. v. Del Monte Foods,*

---

[2] "Common-interest doctrine" is also frequently referred to as "common-interest privilege."  However, the mere fact that although sometimes the doctrine is called the "common-interest *privilege*," it is in fact not an independent source of privilege, bur rather "it applies only to communications that otherwise would be protected by the attorney-client or work product doctrine."  *In re Lifetrade Litig.*, No. 17CV2987JPOKHP, 2022 WL 3644357, at *4 (S.D.N.Y. Aug. 24, 2022); *Carnegie Inst. of Washington v. Fenix Diamonds, LLC*, No. 20-CV-200 (JSR), 2020 WL 7074726, at *1 (S.D.N.Y. June 30, 2020) ("The common-interest doctrine is not a source of privilege in its own right; rather, it is an exception to the rule that attorney-client privilege is generally waived by voluntary disclosure of the [privileged] communication to another party") (internal quotes omitted).

*Inc.*, No. 13 CIV. 8997 JPO GWG, 2015 WL 3450045, at *3 (S.D.N.Y. May 28, 2015) (quotes omitted).

The common-interest doctrine is a shield, however, and not used as a sword.  Here, Capital One seeks to use the common-interest doctrine to essentially invade the attorney-client privilege that exists between WMMD and 6340 NB and entitle Capital One to otherwise privileged material.  This is not the function of the doctrine. *See e.g.*, *E. End Eruv Ass'n, Inc. v. Town of Southampton*, No. CV 13-4810 (AKT), 2014 WL 12847276, at *8 (E.D.N.Y. Mar. 13, 2014) (finding documents and communications between plaintiff and non-parties to be shielded from disclosure by defendant because of a common legal interest); *United States v. Zhu*, 77 F. Supp. 3d 327, 331 (S.D.N.Y. 2014) (finding documents between two companies sharing a legal interest were immune from discovery by plaintiff); *In re Velo Holdings Inc.*, 473 B.R. 509, 518 (Bankr. S.D.N.Y. 2012) (common-interest doctrine applied to shared documents and communications between plaintiff and its agent as to prevent disclosure to defendant).  Accordingly, the common-interest doctrine is inapplicable here. [3]

---

[3] In a supplemental submission filed post-oral argument by Capital One, Capital One contends that *Feighan* (180 A.D.3d at 874) and *In re McCormick* (287 A.D.2d 457, 457 (2d Dep't 2001)) are examples of instances where the common-interest doctrine is used a "sword" to pierce a privilege, rather than as a "shield" to protect it.  The Court disagrees.  Both *Feighan* and *McCormick* involve circumstances where parties were represented by the same attorney and subsequently engaged in litigation.  *See Feighan*, 180 A.D.3d at 874) ("Here, Vecchio's joint representation of the parties in 2013 with respect to the preparation of estate planning documents . . .  constituted representation with respect to the same matter, and we agree with the Supreme Court's determination that the attorney-client privilege could not be invoked to protect confidential communications concerning Vecchio's representation of the parties with regard to the defendant's 2013 revocable trust"); *McCormick*, 287 A.D.2d at 457 ("The appellant and the objectant Suzanne McCormick were both executors of the estate of Edmund J. McCormick. The law firm of White and Case represented the estate and the executors").  This implicates the joint-client exception, not the common-interest doctrine, which requires that the parties actually be represented at one time by the same attorneys.

### ii.    Joint-Client Exception

The joint-client exception provides that "[a]n attorney who represents two parties with respect to a single matter may not assert the privilege in a later dispute between the clients." *Quintel Corp., N.V. v. Citibank, N.A.*, 567 F. Supp. 1357, 1364 (S.D.N.Y. 1983); *Feighan v. Feighan*, 180 A.D.3d 873, 874, 118 N.Y.S.3d 674, 676 (2020) ("Generally, when an attorney represents two or more parties with respect to the same matter, the attorney-client privilege may not be invoked to protect confidential communications concerning the joint matter in subsequent adverse proceedings between the clients").  Importantly, and unlike the common-interest doctrine, the "exception only applies, however, where the attorney *actually represented* both parties."  (*Quintel Corp., N.V.*, 567 F. Supp. at 1364). And so, to determine the applicability of this exception, the Court must first determine whether WMMD actually represented Capital One.

Courts in this jurisdiction are guided by six factors in determining whether an attorney-client relationship exists:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in one aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of the litigation in order to protect another (or a) client's interest; 6) whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

*Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 834 F. Supp. 2d 141, 154–55 (E.D.N.Y. 2011).

Here, it is undisputed that no retainer agreement exists between Capital One and WMMD.  (DE 100-3, Declaration of Kevin M. Walsh ["Walsh Decl."] at ¶ 3) ("At the outset, I want to make clear that WMMD did not at any time have an agreement, written, oral or otherwise, to represent Capital One in connection with the zoning process, or with respect to any

other matter"); DE 111-1, Declaration of Frank DelGiudice Supplementing Motion to Compel

["DelGiudice Dec."] at ¶ 11) ("Additionally, even though there was no written engagement

agreement between Capital One and Walsh and Schafer on this project. . ."). But one was

entered between 6340 NB and WMMD. (Walsh Decl. at ¶ 4; DE 107-1.) 6340 NB contends that

WMMD started providing legal services to 6340 NB concerning the Ground Lease and zoning

issue in late November 2017, but the relationship was formally reduced to a writing through an

engagement letter dated September 25, 2018 ("Engagement Letter"). (DE 107 at 1 n. 1; DE 107-

1.) The Engagement Letter designates 6340 NB as the "Client" and provides that WMMD will

represent 6340 NB in connection with the Property and "a number of zoning approvals." (DE

107-1.) The Engagement Letter further goes on to state that the firm had already met with the

Planning Department of North Hempstead to discuss a zoning application and that the firm's

services would encompass all administrative hearings. (*Id.*) The Engagement Letter makes no

mention whatsoever of Capital One.[4] (*Id.*)

Whether a fee arrangement was entered into by Capital One or fees were paid is a

thornier issue. Walsh, a partner at WMMD, attests that Capital One did not pay any of

WMMD's legal fees and instead, all fees were billed to, and paid by, 6340 NB. (Walsh Decl. at

¶ 4.) However, emails between Capital One and 6340 NB demonstrate a potential fee

arrangement was entered into. (*See* DE 116-2.)[5] Specifically, as it related to getting zoning

approvals for the branch's drive-thru, Capital One offered to reimburse 6340 NB for Walsh's

work, or in the alternative, offered to pay Walsh directly. (*Id.*) 6340 NB did not object or raise

any concerns, but rather stated, "[w]hatever way is easier on your end. Either way works for us."

---

[4] The Court notes that 22 NYCRR § 1215.1 requires attorneys to give every client an engagement letter.

[5] For clarity, Richard Becker ("Becker") and David Ross ("Ross"), involved in the cited email chain are
the sole members of 6340 NB. (*See* DE 53.)

(*Id.*)  Indeed, the idea may have come from 6340 NB itself.  A month prior, when initially confronted with how the parties should proceed applying for the drive-thru zoning, Becker drafted an email for Ross to send to Capital One wherein he suggests 6340 NB, as the landlord, handle the drive-thru zoning so there would be one cohesive application," and offered to Capital One: "We can have the attorney break out billing for each task and CapOne can pay its portion." (*Id.*)  It is unclear from the record if this email was ever sent and it was confirmed during argument that WMMD did not ultimately break out any billing.  Nonetheless, the fact still stands that this pay arrangement never materialized and Capital One did not actually pay any of WMMD's legal fees.  Further, inasmuch as there was a discussion between Capital One and 6340 NB about a potential fee split, it does not appear that WMMD was ever a party to these discussions.  It cannot be said that an informal relationship existed between WMMD and Capital One whereby WMMD performed legal services gratuitously.[6]

Next, the record suggests that WMMD did in fact exclude Capital One from some aspect of its representation to protect 6340 NB's interest.  Capital One argues that Capital One, Walsh, and Schaefer routinely worked together and over the course of the transaction there are hundreds of communications between them.  (DE 108.)  However, the very fact that there are numerous emails over the course of three years between 6340 NB, Walsh, and Schaefer in which Capital One was *excluded*, demonstrates that there was a relationship between WMMD and 6340 NB that Capital One did not share.  (*See* DE 94-2.)

The analysis of the remaining factors, namely whether the attorney actually represented the individual in one aspect of the matter, whether the purported client believes that the attorney

---

[6] Indeed, the engagement letter rule itself requires that "an attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee from a client shall provide" the engagement letter to the client. 22 N.Y.C.R.R. Part 1215. That was not done here.

was representing him, and whether this belief is reasonable, go hand in hand in this circumstance. Capital One asserts that because Walsh and Schaefer worked directly with Capital One's agents, architects, and engineers with respect to the rezoning and communicated with both 6340 NB and Capital One about the proposed site plan and the strategy by which to approach the County and the Town, Walsh and Shaefer were representing both entities.  (DE 94; *see* 94-3.) Capital One also points to the zoning application submitted by WMMD to the Town of North Hempstead on July 24, 2019, which lists Capital One as the "Applicant," and the transcript of a public hearing before the Town ("Town Hearing") wherein Walsh introduces himself as speaking on behalf speaking on behalf of both 6340 NB and Capital One.  (*Id.*; *see* 94-4; 94-5.)

The Court does not find that either fact tips the scale in favor of finding that WMMD represented Capital One.  While the zoning application lists Capital One as the applicant, the application cover letter, printed on WMMD letterhead and signed by Shaefer, unequivocally states: "*I represent, 6340 NB LLC, the owners of the above property*."  (DE 94-5).  A few months later, on October 8, 2019, Schaefer again wrote the Town clearly stating, "*I represent 6340 NB LLC, the owners of the Premises*."  (DE 100-6.)  Indeed, under the Ground Lease, zoning for the project was 6340 NB's obligation. (DE 94.)

There was no such unequivocal language used at the Town Hearing.  Review of the Town Hearing transcript reveals that the Town Board members repeatedly and incorrectly identify 6340 NB as the applicant.[7]  (*Id.*)  So, when Walsh first states that he is "speaking for the applicant" it suggests that he is speaking on behalf of 6340 NB, not Capital One.  However, Walsh then goes on to further introduce himself as belonging to the firm WMMD and speaking for the owner of the property (6340 NB) and the proposed tenant (Capital One) and is further

---

[7] Recall, the actual zoning application lists Capital One as the applicant.  (*See* 94-5.)

joined by a team of civil engineers, architects, traffic consultants, and a representative from Capital One.  However, Walsh's role simply as the presenter at the Town Hearing doing introductions is insufficient under these facts to create an attorney-client relationship between Capital One and WMMD.[8]

What is more, other documents submitted by Capital One illustrate that it was clear to Capital One that Walsh and Shaefer were 6340 NB's attorneys and not its own.  For instance, in the email sent by Capital One to 6340 NB inquiring about how to proceed with the drive-thru approval, Capital One states, "[w]e also need to discuss how to move forward with *your attorney* running point on getting our drive-thru approved with the ZBA."  *See* DE 116-2 (emphasis added).  6340 NB responded to that inquiry identifying Walsh of WMMD as 6340 NB's zoning attorney.  *See id.* ("Our zoning attorney Kevin Walsh (Walsh Markus McDougal & DeBellis, LLP) will be able to handle your applications for the drive-thru").  Even when discussing the potential fee arrangement as discussed above, Capital One refers to Walsh to 6340 NB as "your zoning attorney."  (*Id.*)  Further, in an April 3, 2019, email, well into the progression of the zoning approval project, Capital One's project manager sent an internal email referring to WMMD as "the landlord's attorney."  (*See* DE 100-4.) These facts lend themselves to a finding that Capital One did not believe that Walsh and Shaefer were representing it and even if so, such a belief was not reasonable under the circumstances.

Upon consideration of these factors—that there was no retainer agreement between WMMD and Capital One, that Capital One did not pay any of WMMD's legal fees (despite offering to do so), that WMMD excluded Capital One from certain aspects of the project, that on multiple occasions WMMD unequivocally stated it represented 6340 NB, only, and Capital

---

[8] Walsh's participation in administrative hearings is a delegated obligation under the Engagement Letter with 6340 NB.

One's own recognition that WMMD was 6340 NB's attorneys—the Court finds that there was no attorney-client relationship between Capital One and WMMD.  Therefore, the joint-client exception does not apply here.  *See Quintel Corp., N.V. v. Citibank*, N.A., 567 F. Supp. 1357, 1364 (S.D.N.Y. 1983) (declining to apply the joint client exception, finding the "fact that Citibank attorneys engaged in negotiations and performed legal services in connection with the acquisition does not make Gajria the client of these attorneys").

### B.  Did 6340 NB put the Withheld Emails "At Issue," thus Entitling Capital One to Their Disclosure?

Capital One argues that 6340 NB must turn over the Walsh/Schafer Emails which relate to whether 6340 NB could have successfully rezoned the Property because it waived any purported attorney-client privilege when 6340 NB put the documents squarely at issue by alleging that it was "ready, willing, and able to perform" its obligations under the Ground Lease. (DE 94; DE 108.)

In opposition, 6340 NB argues that an "at issue" waiver is inapplicable here because 6340 NB does not assert any claim or defense that it intends to prove by the use of any privileged communications with Walsh and Schaefer.  (DE 100-2; DE 113.)

An "at-issue" waiver (sometimes referred to as "implied waiver") is typically found when:

> (1) [the] assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his [claim or] defense.

*Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 168 (E.D.N.Y. 2010).  "As per Second Circuit jurisprudence, the key to a judicial finding of an implied waiver 'is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense.'"  *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 CBA RLM, 2009 WL 3334365, at *1 (E.D.N.Y. Oct. 14, 2009) (citing *In re the County of Erie*, 546 F.3d 222, 228 (2d Cir.2008) (emphasis in original)).  However, "'[e]ven if the privilege holder does not attempt to make use of the privileged information[,]... the privilege [may be waived] if [the privilege holder] makes factual assertions the truth of which can only be assessed by examination of the privileged communication.'" *Pall Corp.*, 268 F.R.D. 168–69. "On the other hand, the fact that a privileged communication may simply be relevant to a claim or defense is insufficient to effect forfeiture of the privilege."  *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547, 556 (S.D.N.Y. 2013).

Therefore, in order to determine whether 6340 NB has impliedly waived privilege, it is necessary for the Court to review 6340 NB's claims for anticipatory repudiation and breach of contract and whether 6340 NB *relies* on the Walsh/Schaefer documents as an element of those claims.

6340 NB alleges that on January 31, 2020, approximately 7 months before its zoning deadline under the Ground Lease, Capital One wrongfully terminated and anticipatorily repudiated the Ground Lease, in writing, based allegedly on 6340 NB's purported failure to timely satisfy its "acquisition and rezoning obligations."  (DE 42 at ¶¶ 31-33.)  Following its receipt of the Termination Notice, 6340 NB attempted on two occasions to convince Capital One to withdraw the Termination Notice.  (*Id.* at ¶¶ 35-39.)  Specifically, on February 17, 2020, 6340 NB wrote to Capital One's counsel, stating:

> " ... With the termination, your client Capital One has unequivocally shown it intends to breach the lease Second Amendment. **We are ready willing and able to proceed but to do so require that Capital One withdraw the termination.** If Capital One does not withdraw the termination on or before February 21, 2020, we will have no choice but to deem Capital One in breach and seek all remedies available .... "

(*Id.* at ¶ 38) (emphasis added).  According to 6340 NB, despite these requests, Capital One refused to withdraw the Termination Notice, rescind its wrongful repudiation, and perform its contractual obligations including by cooperating with 6340 NB to obtain the zoning approval as required by the Ground Lease.  (*See id.*)  Capital One has asserted counterclaims alleging that it was well within its rights to terminate the Ground Lease because it was 6340 NB who did not comply with its obligations under the Ground Lease.  (*See* DE 89.)

"Anticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty."  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  When confronted with an anticipatory repudiation, the non-repudiating party has two options: (1) treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties; or (2) treat the contract as valid and await the designated time for performance before bringing suit.  *Id.*  However, to succeed on a claim for anticipatory repudiation, a plaintiff must also show that he was ready, willing and able to perform his own obligations but for the repudiation.  *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 523 (2d Cir. 1990); *Vision Ent. Worldwide, LLC v. Mary Jane Prods., Inc.*, No. 13 CIV. 4215 AT, 2014 WL 5369776, at *5 (S.D.N.Y. Oct. 17, 2014) ("If [the non-repudiating party] elects to terminate the contract and sue for breach, he is excused from tendering his own performance; he need only show that [he] was ready, willing and able to perform").

6340 NB contends that the attorney-client privilege here has not been waived "because allegations that 6340 NB was ready, willing, and able to obtain zoning approval do not constitute a waiver of the privilege." (DE 100-2.) In order to succeed on its affirmative claims, 6340 NB will have to demonstrate that it was, in fact, ready willing and able to perform its obligations under the Ground Lease, but for Capital One's alleged repudiation. 6340 NB asserts that it does not rely on, or intend to use, privilege communications with Walsh or Schaefer to prove its allegations and further introduced the idea during oral argument that perhaps an exception to this rule applies and 6340 NB may not have to establish it was ready, willing, and able at all. When questioned on how 6340 NB intends to show it was ready, willing, and able to obtain zoning approval, 6340 NB stated it was likely it would use Walsh as a witness to testify to these facts. Capital One argues it is entitled to know the contents of the Walsh/Schaefer emails in order to determine if 6340 NB was, in fact, ready willing and able to perform.

Here, Capital One has not sufficiently established that 6340 NB has put the advice of Walsh at issue such that it waives the attorney-client privilege. Insofar as Capital One contends that what was said in the Walsh/Schaefer emails may be relevant to 6340 NB's claims and Capital One's defenses, relevance is insufficient to effect forfeiture of the privilege. *See Chen-Oster*, 293 F.R.D. at 556. To meet its burden, Capital One needed to establish that 6340 NB put Walsh and Schaefer's advice at issue, and it simply has not done so here. *See In re Grand Jury Proc.*, 219 F.3d 175, 182–83 (2d Cir. 2000) ("The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received").

### C.  Do the Walsh/Schaefer Emails Serve a Legal or Business Purpose?

Capital One further argues that "most of the materials and communications at issue" are not privileged in any event because Walsh and Schaefer were hired for a business purpose and thus their communications are factual and not legal in nature.  (DE 94.)  To this end, Capital One requests that in the event the Court determines the Walsh/Schaefer Emails are privileged, it should conduct an *in camera* review of the emails "to determine which documents (or portions of documents) contain legal advice and which contain only factual material and must be produced." (*Id.*)

In opposition, 6340 NB submits that this argument is at odds with Capital One's primary position that WMMD "represented Capital One in all aspects of the legal work being done on the rezoning" and provided "legal advice to Capital One in 'hundreds of communications '"  (DE 113.)  6340 NB argues the Court should summarily reject this argument as meritless.  (*Id.*)

"It is well-established that the attorney-client privilege applies only where legal advice, not business advice, is sought and given."  *Urb. Box Off. Network, Inc. v. Interfase Managers, L.P.*, No. 01 CIV. 8854 LTS/THK, 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006).  In order for a communication to be privileged, its predominant purpose must be to obtain or provide legal advice.  *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 37 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).[9]  In other words, it must involve the "interpretation and application of legal principles to guide future conduct or to assess past conduct."  *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).  "Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal

___
[9] The Court notes that the Supreme Court recently granted certiorari in *In re Grand Jury,* No. 21-1397, __ U.S. __ (Oct. 3, 2022) which will consider the appropriate standard to apply in assessing privilege assertions when the communications are "dual-purpose" involving both legal and business advice.

services, gives rise to no privilege whatever." *Koumoulis*, 295 F.R.D. at 37 (quoting *Colton v. United States,* 306 F.2d 633, 638 (2d Cir.1962)). "Thus, when an attorney is used as a business consultant, the resulting attorney-client communications will not be privileged." *Id.* The communication need not specifically ask for legal advice, but the information must be sent to counsel in order for counsel to provide legal advice. *Urb. Box Off. Network, Inc.*, 2006 WL 1004472, at *4. The burden is on the party asserting the privilege and any ambiguities are construed against that party. *Koumoulis*, 295 F.R.D. at 38.

6340 NB's privilege log identifies that the withheld emails are "[c]onfidential communications from counsel to representatives of 6340 providing legal advice and requesting information in connection with representation involving development and zoning issues pertaining to proposed for Capital One Bank branch." (DE 94-2.) Indeed, Capital One argues that WMMD provided it with legal advice, thus purportedly giving Capital One reason to believe WMMD represented it, on the very same issues. It was undisputed during argument that a zoning or land use attorney's work and advice during a transaction such as this has a predominantly legal purpose. Conclusory allegations, without more, that the Walsh/Schafer emails contain communications for a business purpose, rather than legal advice is insufficient.

## CONCLUSION

For the foregoing reasons, Capital One's motion to compel documents (DE 94) is hereby

DENIED.


Dated:  Central Islip, New York
        November 18, 2022

                                        S O   O R D E R E D:

                                        /S/ *James M. Wicks*
                                            JAMES M. WICKS
                                        United States Magistrate Judge

18