UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

   6340 NB LLC,

                 Plaintiff,

        -against-

   CAPITAL ONE, N.A.,

                 Defendant.

-------------------------------------------------------------X

**MEMORANDUM ORDER**
20-CV-02500 (OEM) (JMW)

**A P P E A R A N C E S:**

Ronald J. Rosenberg
John S. Ciulla
Joshua Marc Liebman
Kenneth E. Aneser
Peter Williams
William J. Birney
**Rosenberg Calica & Birney LLP**
100 Garden City Plaza, Suite 408
Garden City, NY 11530
*For Plaintiff 6340 NB LLC*

Adam Kirschbaum
James Wilson Perkins
**Greenberg Traurig, P.A**
One Vanderbilt Avenue
New York, NY 10017
*For Defendant Capital One, N.A.*

Michelle D. Gambino
David Glenn Barger
Michael Hass
Shirin Afsous
**Greenberg Traurig**
1750 Tysons Blvd., Suite 1000
McLean, VA 22102

**WICKS,** Magistrate Judge:

Two remaining discovery motions are before the Court at this juncture, with both parties adamantine in their respective positions. Discovery kerfuffle's have permeated this case, with each side engaging in linguistic fisticuffs for quite some time over a handlist of issues (*see, e.g.,* ECF Nos. 94, 101, 112, 118, 121, 123 (appeal), 133, 143 (affirmance), 150, 158, 159, 169, 172, 174; Electronic Order dated Nov. 14, 2022). This latest round of motion practice should serve as the coda to discovery, as the final cut-off date is December 18, 2023 (*see* Electronic Order dated Sept. 12, 2023).[1]

First up is Plaintiff 6340's ("6340 NB") motion to conduct an *in-camera* review and compel Defendant Capital One, N.A.'s ("Capital One") to produce documents relating to the decision to terminate the Ground Lease which are currently marked "confidential" and considered privileged. (ECF Nos. 159; 176.) In turn, Capital One has also filed a motion to compel 6340 NB to produce communications related to the following: the aftermath of the Town of Hempstead's refusal to rezone; 6340 NB's receipt of the Termination Notice; and 6340 NB's refusal to move forward with the lease once Capital One rescinded its termination notice. (ECF Nos. 169; 177.) Each side opposes the respective motion. (ECF Nos. 165; 173.) For the reasons that follow, 6340 NB's motion for an *in-camera review* is denied, as is Capital One's motion to compel 6340 NB to produce certain documents.[2]

---

[1] Discovery deadlines in this case have been extended several times.

[2] The original motions were denied without prejudice to renew based upon the parties' desire (at that time) to have a settlement conference. (ECF No. 174.) The undersigned held a settlement conference on September 12, 2023 (*see* Electronic Order dated Sept. 12, 2023), but was not fruitful. Accordingly, the parties were afforded the opportunity to renew their respective motions which are currently pending before the Court.

## RELEVANT BACKGROUND

The Court and the parties are well versed in the underlying facts and allegations of this case from prior orders which need not be repeated here. (*See* ECF No. 101.)

Germane here is that pursuant to a 2017 Ground Lease and its subsequent amendments, 6340 NB was to acquire and rezone two residential parcels in order to construct a Capital One bank branch (the "Property"). (ECF No. 42 at ¶¶ 14-22.) In order to obtain zoning approval, 6340 NB required Capital One's cooperation to provide certain plans and specifications for the anticipated branch. (*Id.* at ¶ 18.) After several extensions of deadlines, which 6340 NB alleges is at the hands of Capital One, on July 24, 2019, 6340 NB finally filed the requisite zoning application. (*Id.* at ¶¶ 26-28.) A public hearing was held before the Town Board of the Town of North Hempstead on December 17, 2019. (*Id.*) Capital One contends that the Town would not agree to the rezoning (*see* ECF No. 94), but 6340 NB alleges progress was made during the hearing and the Town was generally supportive. (*See* ECF No. 42 at ¶ 28.) Nonetheless, just over a month later, on January 31, 2020, Capital One served a Termination Notice of the Ground Lease for 6340 NB's failure to timely perform its obligations under the Ground lease ("Termination Notice). (*Id.* at ¶ 31.) 6340 NB contends that this Termination Notice was wrongful and an act of anticipatory repudiation because 6340 NB was well within the deadlines set in an amendment to the Ground Lease. (*Id.* at ¶ 33.)

In an effort to keep the deal alive, 6340 NB asked Capital One to withdraw the Termination Notice, and in an email to Capital One's counsel, stated: "We are ready willing and able to proceed but to do so require that Capital One withdraw the termination." (*Id.* at ¶ 38.) Capital One did not withdraw the Termination notice and thus 6340 NB commenced this action to recover damages based on Capital One's alleged breach of contract and anticipatory

3

repudiation of a Ground Lease and its subsequent amendments.  (*See* ECF No. 42.)  Capital One has counterclaimed against 6340 NB alleging fraud and breach of contract in connection with 6340 NB's alleged failure to perform under the Ground Lease.  (*See* ECF No. 89.)

## **LEGAL STANDARD FOR MOTIONS TO COMPEL GENERALLY**

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401).  Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92-CV-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06-CV-460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance.").  To that end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS)(AYS), 2015 WL 9413101, at *2-3 (E.D.N.Y. Dec. 22, 2015).

4

Since December of 2015, "Rule 26 has defined the scope of discovery to consist of information that is relevant to the parties' 'claims and defenses.'" *Pothen v. Stony Brook Univ.*, No. 13-CV-6170 (JFB) (AYS), 2017 WL 1025856, at *2 (E.D.N.Y. Mar. 15, 2017). "Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated," and permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case." *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(1)). Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020). That is, the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate. *Id.*

It is beyond peradventure that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court."). It is with these guideposts in mind that the Court considers the present motions.

## DISCUSSION

I. **6340 NB's Motion for *In Camera* Review and to Compel Documents (ECF No. 159)**

6340 NB is requesting an *in camera review* of and to compel Capital One to produce the 74 documents[3] listed on pages 2–4 of Exhibit 17, or at a minimum, the 12 documents that Capital One admits are between non-lawyers. (ECF No. 159.) 6340 NB previously requested the same relief on September 9, 2022, and was denied without prejudice because it was

---

[3] 6340 NB states that 50 of these documents are so heavily redacted that nothing can be gleaned from them and 24 of them are being withheld based on privilege.

5

premature. (*See* ECF No. 101 at 10.) 6340 NB now renews its motion because it claims Capital One is playing a "shell game" to hide information regarding the decision and rationale to terminate the lease. (ECF No. 159 at 1.) 6340 NB provides numerous examples of Capital One's alleged shell game:

(1) On December 21, 2022, the court ordered Capital One to produce documents relating to the bank-café. 6340 NB alleges that two weeks later, Capital One purposely moved to reconsider that order, and at the same time tried to get back certain already produced documents claiming that they were privileged. Only after 6340 NB moved to preclude Capital One from attempting to get the documents back did Capital One acquiesce.

(2) On February 15, 2023, 6340 NB deposed Ethan Wingfield, a Capital One executive. He testified that he was not involved in the decision to send the Termination Notice. 6340 NB alleges either he lied during the deposition or Capital One's response to 6340 NB's interrogatory No. 5, confirming Wingfield was involved in the decision, was false. (*See* ECF No. 160-11 at 5) (Wingfield Deposition Transcript) ("I was not involved in the decision to send the Termination Notice. So I've never seen this document before.").

(3) A week before the deposition, Capital One made certain communications between Mr. Wingfield and David Ross available, communications that Capital One had maintained were privileged. In other words, 6340 NB alleges Capital One strategically withheld the documents only to use them to question Wingfield at the deposition later.

(4) On February 21, 2023, at around 11 P.M., Capital One removed both Wingfield and Michael Bott from interrogatory No. 5 as individuals involved with the decision to send the Termination Notice. This was 11 hours before 6340 NB's planned deposition of Bott. (ECF No. 160-15 at 5-6) (Bott Deposition Transcript) (Q: "With respect to your name being one of the people identified as being involved in the decision to terminate the ground lease, was that an accurate correct statement?" A: "That is not."; A: "I was not involved in that decision."). Yet 6340 NB alleges that Capital One's privilege log shows that Bott received at least 10 privileged email communications concerning the decision to terminate the Ground Lease.

(5) Gilley Mattingly was also identified as a decision-maker but testified that she was not involved. (ECF No. 160-17 at 3) (Mattingly Deposition Transcript) (Q: "Would you consider yourself to be someone who was involved in the decision to terminate the ground lease with 6340 NB?" A: "No.").

(6) Gregory Bryant, a 30(b)(6) witness, was unable to answer basic questions about the termination. (ECF No 160-18 at 7-8.)

6

> (7) Lastly, Capital One claims it only considered terminating the agreement after the rezoning hearing on January 22, 2020. But 6340 NB says that Capital One's privilege log shows related communications three months *before* the rezoning hearing. Thus, Capital One continues to withhold documents it alleges are privileged or work product that relate to termination of the agreement but 12 of them do not involve counsel.

(ECF No. 159 at 1-3.)

Capital One argues that it was never asked to disclose all parties involved in the decision to terminate; it was only asked to disclose those involved with the decision to send the notice.[4] (ECF No. 165.) Thus, in response, Capital One Capital One argues that it named five individuals that it believed to be involved in the decision to send the notice, and that changed over time and Capital One realized Bott and Wingfield actually were not involved in the sending of the notice to terminate. (*Id*. at 1-2.) When Bryant disclosed he did not know who was involved in the notice decision, 6340 NB did not state that the testimony was insufficient in any way. (*Id*. at 2.) And 6340 NB deposed other witnesses for hours on this topic as well. (*Id*.) In addition, it has produced over 1,000 documents to 6340 NB's overly broad request related to the possibility of building a café near a mall. (*Id*. at 3.)

Capital One avers that it turned over every non-privileged document, and its privilege log adequately explains why other documents are privileged. (*Id*.) And 6340 NB could not articulate why reviewing the documents was not sufficient. In essence, the documents are privileged because: they relate to discussions with Capital One's in-house counsel; legal advice sought or context of the advice; concern in-house or outside counsel's work product. (*Id*. at 4.)

Courts faced with making determinations about documents being withheld based on privilege regularly perform *in camera* reviews of the subject documents. *See Shinnecock Indian*

---

[4] The notice was sent because 6340 NB failed to get the rezoning accomplished and did not timely perform.

*Nation v. Kempthorne*, 652 F. Supp. 2d 345, 351 (E.D.N.Y. 2009) ("[T]he Court ruled … in its discretion and in an abundance of caution, that the two documents be submitted under seal for *in camera* inspection."); *Burbar v. Inc. Vill. of Garden City*, 303 F.R.D. 9, 11 (E.D.N.Y. 2014) (noting that prior to issuing an order on plaintiff's motion to compel defendants to produce certain documents that defendants claimed to be protected by the deliberative process and work product privileges, the court directed defendants to submit the documents for an *in camera* review); *Conte v. County of Nassau*, No. 06-CV-4746 (JFB) (ETB), 2009 WL 1362784, at *4 (E.D.N.Y. May 5, 2009) ("[W]hen a court is not able to resolve to its own satisfaction an agency's determination to withhold documents, it may . . . conduct an in camera review.") (citing *ACLU v. DOD*, 389 F. Supp. 2d 547, 567 (S.D.N.Y. 2005)).

Nonetheless, the decision whether to even engage in an *in-camera* review rests within the district court's sound discretion. *Linde v. Arab Bank, PLC*, 608 F. Supp. 2d 351, 361 (E.D.N.Y. Feb. 25, 2009). "A lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." *United States v. Zolin*, 491 U.S. 554, 572 (1989).

"The party invoking the [attorney-client] privilege bears the burden of 'establish[ing] those facts that are the essential elements of the privileged relationship….'" *Chevron Corp. v. Salazar,* 275 F.R.D. 437, 444 (S.D.N.Y. 2011). [5] To be sure, "[t]he fact that a document is sent or received between attorney and client does not make it privileged unless it contains confidential communications relating to legal advice." *Bell v. Pfizer, Inc.*, No. 03-CV-9945 (KMW) (HBP), 2006 U.S. Dist. LEXIS 62611, at *13 (S.D.N.Y. Aug. 31, 2006) (citing *Grossman v. Schwarz*, 125 F.R.D. 376, 387 (S.D.N.Y. 1989)); *Bruno v. Equifax Info. Servs.,*

---

[5] The attorney-client privilege exists where the claimant has shown: (1) a communication between counsel and client; (2) the communication was intended to be and was indeed kept confidential; and (3) the communication was made for give or receive legal advice. *See Ceglia v. Zuckerberg*, No. 10-CV-00569A(F), 2012 U.S. Dist. LEXIS 55367, at *5 (W.D.N.Y. Apr. 19, 2012).

8

*LLC*, No. 17-cv-327 (WBS) (EFB), 2019 U.S. Dist. LEXIS 24502, at *16-17 (E.D. Cal. Feb. 14, 2019) ("Counsel's mere inclusion among the recipients of the initial emails is not sufficient to afford protection under attorney-client privilege.")  Thus, an *in camera* review would ensure that there is a "bona fide request for legal advice and not a subterfuge to evade discovery obligations."  *Valassis Communs., Inc.*, No. 17-cv-7378 (PKC), 2018 U.S. Dist. LEXIS 160234, at *8 (S.D.N.Y. Sept. 19, 2018).

In deciding whether to conduct the *in-camera* review, the Court will examine the non-movant's privilege log to determine whether privilege has been sufficiently identified.  "[T]he [privilege] log must provide[ ] information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege."  *Gunning v. New York State Just. Ctr. for Prot. of People With Special Needs*, No. 19-CV-1446 (GLS) (CFH), 2022 WL 783226, at *6 (N.D.N.Y. Mar. 15, 2022); *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 111 (S.D.N.Y. 2005) ("At the very least, the party claiming the attorney-client privilege must give evidence that the document was created for the purpose of providing or obtaining legal rather than business advice.").

This Court is guided by Local Civil Rule 26.2, which requires that parties include the following in their privilege logs: the type of document; the general subject matter of the document; the date of the document; author of the document; addressees of the document; and the relationship of the author/addresses to one another.  *See* Local Civil Rule 26.2(a)(2)(A).

Here, the Court declines to engage in an *in-camera* review for several reasons.  *First,* Capital One has complied with the Local Rules in providing an adequate privilege log: it states the description of the privilege as well as the author and addressees of such document.  *Cf.*

9

*Edebali v. Bankers Std. Ins. Co.*, No. 14-CV-7095 (JS) (AKT), 2017 U.S. Dist. LEXIS 110665, at *23 (E.D.N.Y. July 17, 2017) (finding no supporting documentation submitted for the broad privilege assertion and requiring defendant to produce a privilege log to determine if there is a plausible claim of privilege); *Ceglia,* at *7-9 (finding no privilege where plaintiff's privilege log merely stated that the communication discussed "a hushmail account"). According to Capital One's privilege log, all communications occurred between company employees and counsel regarding the agreement negotiations, agreement terms, termination, costs and design of the premises, decisions to open a branch, or the zoning process. (ECF Nos. 160-13; 160-16.) This is further evidenced by Mark Graybeal's, former in-house counsel of Capital One, affidavit which stated that he provided legal advice in many of the communications:

> Although these communications do not copy me or any lawyers in my group, these communications were the direct result of my instructions to collect the info described above, including my providing the reasons why the info, in order to render legal advice to Capital One, which I was able to do as a result of these communications.

(ECF No. 165-11 at 5.)

In short, there is nothing raised on the face of the privilege log itself giving rise to any question of the applicability of a privilege.

*Second,* conducting an *in-camera* review would be a mere fishing expedition and would not yield any further information than 6340 NB already possesses. 6340 NB requested information related to the decision to terminate the Ground Lease prior to the Termination Notice being sent; communications related to the decision not to operate a retail branch; and communications regarding the Termination Notice. (ECF No. 159-1.) It spent hours deposing several Capital One employees (Gregory Bryant, a corporate representative; Andrew MacDougall, the primary decisionmaker for the Termination Notice; and Ethan Wingfield, a Capital One Vice President) about these issues, yet seeks to take a second bite at the apple in

10

filing this motion for an *in camera* review. (*See* ECF No. 165 at 2) ("6340 [NB] also took six depositions of witnesses possessing relevant facts and asked every single witness about the Terminate Notice and the reasons for it.") 6340 NB has not made a sufficient evidentiary showing of the need to justify *in camera* review under the circumstances. As such, this Court declines 6340 NB's invitation to do so. *See In re Omnicom Group Inc., Sec. Litig.*, 233 F.R.D. 400, 410 n.7 (S.D.N.Y. 2007) (declining to engage in an *in-camera* review where movants did not make a "sufficiently compelling evidentiary case to trigger such review" and the documents would not answer open questions before the court)' *Weber v. Paduano*, No. 02-cv-3392 (GEL), 2003 U.S. Dist. LEXIS 858, at *40 (S.D.N.Y. Jan. 14, 2003) ("When faced with claims of privilege, courts often undertake in camera review in order to supplement the parties' privilege logs and determine the content of the documents. However, in camera review of the documents, while potentially helpful to the determination of privilege, is not … to be routinely undertaken … as a substitute for a party's submission of an adequate record for its privilege claims, especially where, as here, the Court would have to examine a large quantity of documents."). Undertaking an *in camera* review should not be taken lightly. For in reviewing for privilege, the Court is given unfettered access to privileged communications between attorney and client. In order to justify such a review, the movant must make an evidentiary showing that there is some basis to suspect the communications withheld are in fact not privileged. That showing is absent here.

   Relatedly, it has been indicated in at least one deposition that the decision to terminate the Ground Lease was based upon 6340 NB failure to obtain the zoning: "Yeah, so Andrew [MacDougall] reviewed information that was provided to him that clearly indicated that, you know, from a timeliness perspective the landlord did not meet commitments and the biggest issue, to be quite honest, John, is we didn't think we could get the rezoning done, that the

11

landlord could get the rezoning done.· And because of that we needed to move on.· And so that's what drove the termination decision." (ECF No. 159-16 at 9) (Bryant Deposition Transcript). Therefore, the reasoning behind terminating the Ground Lease has been explored.

For the foregoing reasons, the Court declines to conduct an *in-camera* review of the documents.

**II.     Capital One's Motion to Compel (ECF No. 169)**

Capital One seeks an order requiring 6340 NB to account for and produce communications related to three "critical events": (1) the aftermath of the Town of Hempstead's declining to rezone the property; (2) 6340 NB's receipt of the Termination Notice; and (3) 6340 NB's refusal to move forward with the Ground Lease after Capital One rescinded the Termination Notice.  (ECF No. 169 at 1.)  It also requests that the Court order 6340 NB to detail the documents it claims to be privileged, rather than provide a categorical log so that Capital One and the Court may fully assess the privilege claim and to perform an additional search for and produce responsive documents.  (*Id*. at 3.)  In short, Capital One does not believe, and argues it is not credible, that only two emails between Dave Ross and Richard Becker (6340 NB's principals) exist for this period.  (*Id*.)  6340 NB indeed has admitted it has relevant documents but refuses to produce them claiming privilege without otherwise explaining how they are privileged.  (ECF No. 177.)

Capital One makes two arguments.  *First*, Capital One argues that Ross and Becker are cousins that live on opposite ends of the country and they communicated daily about the deal through email.  For example, from the signing of the Ground Lease (2017) to the rezoning hearing (January 22, 2020), Capital One notes that Ross and Becker exchanged over 1,000 emails concerning the deal.  (*Id*. at 2.)  Thus, the likelihood that they randomly stopped communicating about the deal *after* the rezoning was denied is very slim.  And discussions on

the business decision on what to do with the Capital One project are discoverable and are *not* privileged. (*Id*.) *Second*, Capital One argues that the emails could not be privileged because 6340 NB's privilege log only has approximately 100 total documents. (*Id*.) And its zoning counsel's privilege log only indicates a "few" communications after the rezoning hearing. (*Id*.) Capital One says the communications are relevant because they bear on 6340 NB's obligation to mitigate damages since 6430 NB could have avoided injury post-termination of the Ground Lease. (*Id*. at 3.)

In response, 6340 NB makes two arguments. (ECF No. 173.) *First*, 6340 NB argues that it produced eight (not just two) non-privileged emails covering February 3 to February 19, 2020 which show that Becker and Ross requested Capital One to rescind the notice so 6340 NB could go forward with the rezoning. (ECF No. 173 at 2); (*see* ECF No. 173-4.) It further postures that Capital One is notorious for abusing discovery. (ECF No. 173 at 2). *Second*, 6340 NB argues that the Stipulation Order only required categorical logs and requiring it to produce a detailed log is improper. (*Id*. at 3.) And Capital One has not provided support to show that the communications are wrongly labeled as privileged. (*Id*. at 4.) In sum, 6340 NB believes Capital One's motion is only meant to divert the Court's attention from 6340 NB's motion. It requests the Court deny the motion to compel, and order Capital One to pay expenses including attorney's fees incurred to oppose the motion under FRCP 37(a)(5)(B).[6] (*Id*.)

---

[6] In its supplemental papers, 6340 NB also states that the cases cited by Capital One are distinguishable in that they involve circumstances in which the movant presented support demonstrating the existence of additional documents in the non-movant's possession that were being withheld from production. (ECF No. 179.) However, here, there is no such evidence demonstrating that documents are being withheld. (*Id*.)

Capital One responds stating that 6340 NB's response (ECF No. 179) is a sur-reply, which is not allowed by the undersigned's rules. (ECF No. 181.) It further states that it cannot prove that the documents exist nor how the materials are not privileged because 6340 NB's counsel has yet to explain why the documents are privileged as this is their burden, not Capital One's. (*Id.*). However, 6340 NB states that it did not file an improper sur-reply but rather was just responding to the cases cited by Capital One. (ECF No. 182.)

Here, 6340 NB has sufficiently asserted privilege. Like Capital One for its opposition to 6340 NB's motion (ECF No. 165), Kevin M. Walsh Esq.'s and 6340 NB's privilege logs comply with the Local Rules. *See* Local Civil Rule 26.2(2)(A). The Walsh and 6340 NB privilege logs detail how the documents are privileged. For example, in Walsh's privilege log (ECF No. 169-2), it schedules out the time, document type, sender/receiver, who is copied, subject, description, and type of privilege asserted. Of the 66 documents in this log, Walsh alleges that the document is protected by the attorney/client privilege based on "confidential communications between [Becker/Walsh/Ross/Halpern/Schaefer/Beck/Pearsall] for the purposes of legal advice and counsel." (*See id.*) To be sure, though not dispositive, all of these communications include at least one attorney—Kevin M. Walsh, Esq; Laura Schaefer, Esq.; Katrine A. Beck, Esq.; or Leonard Halpern, Esq. In addition, the 6430 NB privilege log contains similar descriptions:

- Confidential communications between counsel and representatives of 6340 NB providing legal advice and requesting information in connection with representation regarding negotiations with Capital One for ground lease involving 245 and 249 Old Country Road, Carle Place, NY;

- Confidential communications between counsel and representatives of 6340 NB providing legal advice and requesting information in connection with representation involving development and zoning issues pertaining to proposed Capital One Bank branch;

- Confidential communications between counsel and representatives of 6340 NB providing legal advice and requesting information in connection with representation pertaining to matters involving contract with owner of 10 Byrd Avenue, Carle Place, NY;

- Confidential communications between counsel and representatives of 6340 NB providing legal advice and requesting information in connection with representation pertaining to

---

Further, it states that Capital One has the burden to show that the documents fail to comply with the privilege log in accordance with Local Rule 26.2(c). (*Id.*) To the extent that the parties wish to have the Court consider the slew of supplemental documents in response to Capital One's supplemental brief, the Court declines to do so. *See AA Medical v. Almansoori,* No. 20-cv-3852 (DG) (JMW), 2023 WL 4073772 (E.D.N.Y. June 19, 2023) (declining to consider Plaintiff's sur-reply as the Court had not given him prior permission to do so after the motion was fully submitted).

  matters involving contracts with owners of Properties to be Acquired in connection with Ground Lease;

- Confidential communications between counsel and representatives of 6340 NB providing legal advice and requesting information in connection with representation involving lease with tenant, Scuba Freedom Inc. at 245 Old Country Road, Carle Place, NY; and

- Confidential communications between litigation counsel, zoning counsel and 6340 NB representatives regarding information requested by counsel and/or reflecting legal advice given by counsel and preparing material in anticipation of litigation in connection with representation involving Capital One's wrongful termination of Ground Lease.

(ECF No. 169-3.) Notably absent from Capital One's motion to compel is any indication that 6340 NB's log fails to comply with the Local Rules or that there is an improper assertion of privilege. Without any evidence that 6340 NB is withholding relevant documents or otherwise nefariously invoking claims of privilege, Capital One has no basis to compel 6340 NB to detail the documents it claims to be privileged.

  Capital One requests that 6340 NB be required to provide further detail to its privilege log to assess the privilege claims. However, critically, and perhaps even fatal to Capital One's claims, is the fact that the parties *agreed* to exchange categorical privilege logs. (ECF No. 173 at 3) ("Pursuant to Section VIII of the parties' so-ordered, Stipulation dated September 21, 2021 (the "Stipulation and Order" (*see* ECF Doc. No. 54, p. 13)), the parties agreed, *inter alia*, to exchange categorical privilege logs in compliance with Local Rule 26.2(c).") It would be unfair for 6340 NB to now have to supplement its statements based on Capital One's mere assumptions. Further, courts in this Circuit have found that categorical logs are indeed acceptable and appropriate under certain circumstances. *See, e.g., In re Actos Antitrust Litig.*, 340 F.R.D. 549, 553 (S.D.N.Y. 2022) ("Categorical privilege logs are appropriately used in this Court."); *Rekor Sys. v. Loughlin*, No. 19-CV-07767 (LJL), 2021 WL 5450366, at *1 (S.D.N.Y. Nov. 22, 2021) ("[A] categorical privilege log is adequate if it provides information about the nature of the

withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege."); *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 297 F.R.D. 55, 59 (S.D.N.Y. 2013) (noting that the EDNY and SDNY local civil rules "authorize[] the use of a categorical privilege log").

In this same vein, Capital One cites to a series of cases for the proposition that 6340 NB has not stated why the documents between Ross and Becker have not been produced on these critical events. (ECF No. 177.) However, those cases are inapposite because there, the Court found there was at least some concession or evidence that relevant documents existed. *See e.g. Aristidou v. Aviation Port Servs., LLC,* No. 18-CV-4040 (MKB) (RER), 2020 U.S. Dist. LEXIS 31348, at *31-32 (E.D.N.Y. Feb. 21, 2020) (finding that defendants' response that no other documents existed "[could] not be taken seriously" considering that executives admitted to possessing such documents in a deposition); *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, No. 16-CV-00024 (CHB), 2021 U.S. Dist. LEXIS 51651, at *26 (W.D. Ky. Mar. 18, 2021) (finding evidence of more documents' existence and requiring defendant to respond to the request for production since it was "unbelievable" that the corporations conducting such large sales would rarely communicate via email and thus there would surely be emails between the defendants regarding the events at issue); *Johnson v. New Destiny Christian Ctr. Church*, No. 15-cv-1698-Orl-37GJK, 2017 U.S. Dist. LEXIS 213861, at *18 (M.D. Fla. Aug. 28, 2017) (finding that defendant's refusal to produce documents was in bad faith and there must be more documents in connection to 2014 financial considering the funds received that year). Unlike those cases, neither 6340 NB nor any of its executives have admitted to having any communications beyond those already produced or marked as privileged. Indeed, Capital One's arguments based on mere speculation here was the same reason why 6340 NB's prior motion to

16

compel was denied. *See 6340 NB LLC v. Capital One, N.A.*, No. 20-CV-02500 (JMA)(JMW), 2022 U.S. Dist. LEXIS 163127, at *13 (E.D.N.Y. Sept. 9, 2022) (denying motion to compel because 6340 NB had no basis to believe there were actually more documents nor did 6340 NB suggest any communications were wrongly labeled as privileged); *see also Scantibodies Lab., Inc. v. Church & Dwight Co.,* No. 14-cv-2275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396, at *74 (S.D.N.Y. Nov. 4, 2016) ("Defendant's mere speculation that such documents exist is an insufficient basis to compel the production of such documents…."); *Universitas Educ., LLC v. Benistar,* No. 20-CV-738 (JAM), 2021 U.S. Dist. LEXIS 255256, at *20 (D. Conn. Dec. 22, 2021) ("It is unclear what other documents the plaintiff is requesting, and moreover, the plaintiff has not presented any evidence substantiating its belief that additional responsive documents have been withheld.").

Accordingly, Capital One's motion to compel 6340 NB to produce the documents or otherwise provide further detail to the documents it claims to be privileged is denied.

### III. Both Parties' Request for Fees

Both parties request fees from the opposing party for having to respond to each motion to compel. (*See* ECF Nos. 165 and 173.) "It is well established that unless a responding party shows that its failure to provide requested discovery was substantially justified, the court upon granting a motion to compel is required to award the prevailing moving party its reasonable expenses including attorney's fees incurred in connection with the motion, or unless the award in the circumstances would be unjust." *Metzgar v. U.A. Plumbers & Steamfitters Local No. 22 Pension Fund*, Nos. 13-CV-85V(F), 17-CV-726V(F), 2017 U.S. Dist. LEXIS 171926, at *2 (W.D.N.Y. Oct. 17, 2017) (citing *Scott-Iverson v. Independent Health Assoc., Inc.*, No. 13-CV-451V(F), 2017 WL 759843, at *2 (W.D.N.Y. Feb. 28, 2017); *see also Fed. R. Civ. P.* 37(a)(5)(A)(ii). Similarly, if a motion to compel is denied, the court shall not order payment of

reasonable expenses including attorney's fees if the motion was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). "Whether a party was substantially justified in resisting discovery is determined by 'an objective standard of reasonableness and does not require that the party have acted in good faith.'" *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (citing *Bowne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995)).

The Court denies awarding fees to either party for several reasons. *First*, both parties here vehemently believe that their documents are privileged and not subject to disclosure. Capital One states that it produced all of the required documents relating to the decision to terminate and went through a painstaking six-week process to ensure each document was properly logged. (*See* ECF No. 165 at 3.) It then provided "substantial justification" for non-disclosure of the documents by informing 6340 NB which documents would remain privileged or otherwise redacting the legal content from the documents. (*Id.*) 6340 NB has also substantially justified its position stating that it repeatedly told Capital One's counsel that it produced all responsive, non-privileged communications already. (ECF No. 173 at 2.)

*Second*, though a good faith effort is not required, the Court also finds that both parties made efforts to meet and confer prior to filing their respective motions and thus neither side should be obligated to pay expenses or fees related to opposing the motion. (*See* ECF No. 173) (stating that parties engaged in a "lengthy meet and confer process"); (ECF No. 165 at 6) (noting that there were "substantial meet-and-confers addressing this matter between the parties").

*Finally*, both motions required a similar amount of effort in drafting and opposing and compiling documents in support of those motions and oppositions. Accordingly, it would be unjust to award fees to one party without awarding fees to the other. Moreover, each party has

not provided substantive reasons for payment of fees beyond the general statement that the motion was meritless, so the requesting party deserves reimbursement. For these reasons, both parties' request for fees are denied.

## **CONCLUSION**

For the reasons that follow, 6340 NB's motion for an *in camera* review is denied (ECF No. 176) and Capital One's motion to compel documents is denied (ECF No. 177). Further, both parties' request for fees against one another is denied.

Dated: Central Islip, New York
       November 16, 2023

**S O   O R D E R E D:**

*/S/ James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge