UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

6340 NB LLC,

                    Plaintiff,

       -against-

CAPITAL ONE, N.A.,

                    Defendant.

------------------------------------------------------------X

**REPORT AND**
**<u>RECOMMENDATION</u>**
20-CV-02500 (OEM) (JMW)

**A P P E A R A N C E S :**

John S. Ciulla, Esq.
**Rosenberg Calica & Birney LLP**
100 Garden City Plaza, Suite 408
Garden City, NY 11530
*For Plaintiff 6340 NB LLC*

Michael Hass, Esq.
Michelle D. Gambino, Esq.
**Greenberg Traurig**
1750 Tysons Blvd., Suite 1000
McLean, VA 22102

**WICKS,** Magistrate Judge:

      This case arises out of Plaintiff 6340 NB LLC's and Defendant Capital One's agreement

to build a bank branch on four parcels of land located in Carle Place, New York. However, the

arrangement went awry when 6340 NB allegedly failed to uphold its end of the bargain and

Capital One subsequently terminated the agreement. 6340 NB sued Capital One, arguing that

Capital One never intended to proceed with the agreement and often caused delays progressing

with the project, thus frustrating 6340 NB's ability to perform. Capital One, in turn, asserted a

host of counterclaims alleging essentially that 6340 misled Capital One into believing it was

genuinely performing.

Presently before the Court is Capital One's renewed motion to amend, in which Defendant Capital One seeks to (1) dismiss Counts II (Fraud in the Inducement-Fraudulent Misrepresentations and Concealment and Representations and Warranties: Rescission of Agreement) and X (Breach of Contract-Reduction in Size of Bank Branch) and (2) to add Richard Becker and David Ross, co-managers of 6340 NB, to two of the counterclaims, namely, fraud and alter ego liability.  (ECF No. 150; ECF No. 177).  For the following reasons the undersigned respectfully recommends that Capital One's renewed motion to amend be granted with respect to dismissing Counts II and X and granted in part and denied in part with respect to adding Becker and Ross on the alter ego liability theory.[1]

## RELEVANT BACKGROUND

According to the operative counterclaims, Capital One asserts that 6340 NB failed to perform under the Ground Lease and its subsequent amendments for various reasons. (ECF No. 89 at ¶¶ 12-26.)  The 6340 NB-Capital One agreement "obligate[d] [6340 NB] to apply for and achieve rezoning of the Residential Parcels to allow for commercial use."  (*Id.* ¶ 18.)  In addition, 6340 NB also represented that the premises were "free and clear of all leases."  (*Id.* ¶ 22) (citing section 5.1 of the agreement).  Capital One alleges that the tenants' failure to vacate the premises as promised and failure to obtain rezoning of the two lots were major factors in why the plan to

---

[1] There is disagreement within this Circuit as to whether the denial of a motion to amend is considered dispositive matter.  "Some courts 'have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive.'"  *Thompson v. Spota*, No. 14-CV-2473 (JMA) (AKT), 2015 U.S. Dist. LEXIS 92053, 2015 WL 4389931, at *1 (E.D.N.Y. July 15, 2015) (citing *Tyree v. Zenk*, No. 05-CV-2998, 2009 U.S. Dist. LEXIS 43872, 2009 WL 1456554, at *3 (E.D.N.Y. May 22, 2009)).  Out of an abundance of caution, the undersigned proceeds by Report and Recommendation rather than by order.  *See Domni v. Cnty. of Nassau*, No. 19-CV-00083 (JMA) (LGD), 2022 U.S. Dist. LEXIS 207184, 2022 WL 16950055, at *1 (E.D.N.Y. Nov. 14, 2022) (reviewing *de novo* the denial of a motion to amend "[f]or the avoidance of doubt"); *see also Lashley v. Sposato*, No. 13-CV-6343 (JMA) (SIL), 2016 U.S. Dist. LEXIS 12165, 2016 WL 406351, at *1 n.1 (E.D.N.Y. Feb. 2, 2016) ("[D]enial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility"), *report and recommendation adopted*, Order (Feb. 19, 2016).

build the new branch failed.  (*See id*. at ¶¶ 30-39; 66-69).  Capital One has also asserted a claim

for declaratory judgment asking the Court to declare that its termination notice was proper given

the terms of the Ground Lease and the Town of North Hempstead's (the "Town") refusal to

approve the plan.  (*Id*. at ¶¶ 73-88; 128-134.)  Capital One alleges that 6340 NB violated its duty

to act in good faith by attempting to sell its the property that was under contract with Capital

One.  (*Id*. at ¶¶ 40-48.)  Likewise, when 6340 NB was seeking an extension of time to perform

under the Ground Lease it did not disclose to Capital One that it had renewed its contract with a

broker named CBRE to sell the property.  (*See id*.)  Capital One avers 6340 NB purposefully hid

these facts because it knew if it revealed them, the Agreement would be over.  (*See id*.)  The

bank maintains that 6340 NB's willful concealment led Capital One to believe that 6340 NB was

carrying out its obligations under the Ground Lease in good faith which induced Capital One to

agree to multiple extensions of time to perform.  (*Id*. at ¶¶ 72-73.)

Given that Defendant seeks to add Ross and Becker as defendants to this matter, the

Court outlines their purported involvement with the alleged fraud.  Capital One alleges the

following:

- Ross falsely told Capital One that the Town would expedite the rezoning and rule in Plaintiff's favor;

- When the rezoning hearing occurred in January 2020, Becker affirmed that he owned two residential lots, but this was false.  One was under contract with 6340 NB and the other was contracted under 244 Lansdowne LLC—an entity that Becker knew did not even exist.  Still, Ross and Becker assured Capital One that they had *all* parcels under contract;

- After the Town had already disapproved of the zoning, Ross stated he would be able to change the Town's mind which prompted Capital One to rescind its termination notice.

- Plaintiff concealed from another entity named CBRE that it had a lease for 245 Old Country Road with Capital One.  Further, 6340 NB was even attempting to contract with another entity on the side (iFly);

- Relatedly, Plaintiff lied about the remaining tenants in one of the buildings—namely it stated that the one tenant left in the building would leave by April 2019;

(ECF No. 151 at 7-11.)

Upon first hearing this information, Capital One was still unsure whether:

- Becker knew of the representations that Ross made regarding the tenants in the building;

- both Ross and Becker asked a stooge buyer to lure customers to sell parcels of land to them;

- both Becker and Ross knew that 244 Lansdowne LLC never existed; and

- they treated 6340 NB as a separate corporate entity from themselves, specifically whether they had corporate formalities or treated 6340 NB as an alter ego.

(*Id.* at 11-15.)

Capital One later sought to confirm the information found in these documents at Ross's and Becker's depositions. At those depositions, Capital One learned that 6340 NB did not maintain the proper corporate documentation; namely, it did not keep any books and records, employees, corporate officers, or financial statements, and was undercapitalized. (*Id.* at 13.) Further, Becker and Ross would attempt to enter into contract using a phony entity or would try to enter into leases with other tenants without informing Capital One and also used a fake buyer so that homeowners would sell properties to them. And, neither Ross nor Becker ever told Capital One about the tenants remaining in the building upon the tenant's extending their lease. (*Id.* at 13-14.)

## PROCEDURAL BACKGROUND

Plaintiff filed its Complaint on June 4, 2020.  (ECF No. 1.)  On July 17, 2020, Defendant then filed its Answer with Counterclaims (ECF No. 11).  Further, on August 10, 2020, Plaintiff filed its Answer to Capital One's Counterclaims.  (ECF No. 15.)

The Court adopted a scheduling order on July 15, 2021 at the Initial Conference whereby the date to join new parties or amend the pleadings was September 15, 2021.  (ECF No. 37.)  On August 12, 2021, Plaintiff filed an Amended Complaint (ECF No. 42) and on December 1, 2021, Capital One filed its Answer with Counterclaims to that Amended Complaint (ECF No. 59).  On January 12, 2022, Plaintiff then filed its Answer to Plaintiff's counterclaims (ECF No. 63).

On July 26, 2022, Capital One once again moved for leave to file another Amended Answer and Counterclaims (ECF No. 78) which was So Ordered by the Court (ECF No. 87).  The Amended Answer was filed on ECF on August 11, 2022.  (ECF No. 89.)  Plaintiff then responded on August 24, 2022 (ECF No. 92).

Ross and Becker's depositions took place in October and November 2022.  (ECF No. 151 at 12.)  In December 2022, Capital One informed Plaintiff about its need to add Ross and Becker as defendants.  (*Id.* at 14.)  Both parties agreed to resolve their disputes and reengage in settlement discussions.  (*Id.* at 6.)  However, Plaintiff asked for case law supporting these claims of fraud and alter ego liability against Ross and Becker which Capital One provided on December 30, 2022.  (*Id.* at 14.)  Plaintiff then asked to review the proposed pleading, which was sent on January 24, 2023.  (*Id.*)  The parties later agreed on a schedule for filing the anticipated motion to amend.  (*Id.* at 15); (*see also* ECF Nos. 146 and 147.)

The motion to amend was bundle-filed on February 21, 2023, nearly 18 months after the deadline to amend the pleadings had passed.  (ECF Nos. 150-155.)  The original motions were

denied without prejudice to renew based upon the parties' desire (at that time) to have a settlement conference. (ECF No. 174.) The undersigned held a settlement conference on September 12, 2023 (*see* Electronic Order dated Sept. 12, 2023), but it was not fruitful, the case was not yet ripe. Accordingly, Capital One was afforded the opportunity to renew its respective motion which is currently pending before the Court.

Defendant now seeks to (1) dismiss Counts II and X against Plaintiff and (2) add David Ross and Richard Becker, co-managers of 6340 NB, as defendants on the fraud counts "because of their admission of their knowledge and participation in the frauds perpetrated against Capital One as confirmed in their depositions and the discovery that was produced." (ECF No. 151 at 5.) Specifically, it seeks to state fraud claims against Ross and Becker individually and to pierce the corporate veil through an alter ego theory of liability. (*Id.* at 21.) It argues that these claims were not brought in a dilatory manner and will not prejudice Plaintiff. (*Id.* at 23-24.)

Plaintiff opposes, arguing that Capital One has failed to establish good cause under Fed. R. Civ. P. 16(b) since it had possession of the documents in question long before it filed this motion; the fraud claims against Becker and Ross are futile because they are duplicative of the breach of contract counterclaims against Plaintiff and Defendant cannot establish justifiable reliance; and alter ego liability claim is equally futile. (ECF No. 154.)

Defendant responds that 6340 NB lacks standing to oppose the new claims against Ross and Becker;[2] Capital One acted diligently to file for leave to amend; the fraud and alter ego

---

[2] Though, generally, "a plaintiff lacks standing to assert the rights of another in federal court," here, 6340 NB would have third-party standing because of the close relationship it has with Ross and Becker— namely the fact that they co-managed 6340 NB. *Ilya Feliksovich Iosilevich v. City of New York*, No. 21-CV-4717 (RPK) (LB), 2022 U.S. Dist. LEXIS 143614, at *16 (E.D.N.Y. Aug. 10, 2022); *see also Conrad v. De LaSalle*, No. 21-cv-8462 (CPO) (AMD), 2023 U.S. Dist. LEXIS 120347, at *1 (D.N.J. July 12, 2023) (noting that current parties must demonstrated they will be affected by a proposed amendment "do not have standing to assert claims of futility on behalf of proposed defendants") (citing *Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-5592, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014));

claims are not futile but rather are sufficiently pled and not redundant; and the factual disputes about the alter ego claims are inappropriate at the pleading stage.[3]  (ECF No. 155.)

## THE LEGAL CONTEXT FOR MOTIONS TO AMEND GENERALLY

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), which provides that "[t]he court shall freely give leave when justice so requires."  Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Communs Co. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile.  *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted).  The moving party must attach the proposed amended complaint to the motion, as was done here, specifying the new claims and/or parties intended to be added.  *See Nabatkhorian v. County of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

---

*New York Wheel O v.,* 481 F. Supp. 3d 216, 250 (S.D.N.Y. 2020) (collecting cases in which courts "allowed a defendant to assert futility on behalf of a prospective defendant" where there was a close relationship between the current party and prospective party).

[3] In its opposition to Capital One's letter to renew the motion for leave to file amended counterclaims, 6340 NB requests leave to file a supplemental memorandum of law.  (ECF No. 178.)  In response, Capital One states that 6340 NB's motion for leave to file a supplemental memorandum of law should be denied because 6340 NB failed to comply with the local and court's rules in making the motion; 6340 NB failed to demonstrate good cause to amend its opposition since the motion had been fully briefed for months; and Capital One did not raise any new facts in renewing its motion and 6340 NB should not be permitted to respond with new arguments now.  (ECF No. 180.)  Capital One's points are well taken.  After the settlement conference on September 12, 2023, the undersigned allowed "supplemental documents with the letter motion" to be filed.  (Electronic Order dated Sept. 12, 2023.)  However, given that the movant, Capital One, did not append any supplemental documents to its motion to renew (ECF No. 177), 6340 NB's request for leave to file this document is denied.

The Second Circuit has clarified the standard to be applied by the District Courts in considering motions for leave to amend dependent upon the timing of the proposed amendment:

> The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends— either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal" amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021); *see also Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *4 (W.D.N.Y. Nov. 20, 2023) (stating that Rule 15(a)'s standard must be balanced with Rule 16(b)'s good cause standard).[4]

---

[4] The Court notes that in order to add new parties, as Capital One seeks to do here, the parties must move pursuant Fed. R. Civ. P. 13 which is administered "according to the same standard directing that leave should be freely given when justice so requires." (Fed. R. Civ. P. 13, Committee Notes on Rules—2009 Amendment). Fed. R. Civ. P. 13(h) states that Fed. R. Civ. P. 19 (required joinder of parties) and 20 (permissive joinder of parties) "govern the addition of a person as a party to a counterclaim or crossclaim." (Fed. R. Civ. P. 13(h)). Amendments under Rule 20(a) are afforded the same standard as Rule 15. *See Am. Home Assur. Co. v. Merck & Co*., No. 03-cv-3850 (VM) (JCF), 2004 U.S. Dist. LEXIS 19135, at *5 (S.D.N.Y. Sept. 24, 2004). Notably, neither party cites these Rules. Nevertheless, the Court finds that Becker and Ross may be permissively joined given that their involvement concerns the same transaction, [or] occurrence] as the Plaintiff or are otherwise "logically related." Fed. R. Civ. 20(a)(2)(A)—(B) (requiring that for parties to be joined as a counterclaim defendant, the relief sought against them must be joint or several or occur out of the "same transaction, occurrence, or series of transactions or occurrences;" and "any question of law or fact common to all defendants will arise in the action"); *J.B.I. Indus. v. Suchde*, No. 99-cv-12435 (AGS), 2000 U.S. Dist. LEXIS 11885, at *56 (S.D.N.Y. Aug. 16, 2000) (quoting *Oi Kwan Lai v. Easpoint Int'l, Inc*., No. 99-cv-2095 (DLC), 1999 WL 688466, at *2 (S.D.N.Y. Sept. 1, 1999)) ("The phrase 'same transaction or occurrence' has been interpreted to mean logically related claims by or against different parties."). All counterclaims stem from the concealing of information related to the 6340 NB-Capital One agreement. Thus, there is no doubt as to whether Ross and Becker *can* be joined and the only inquiry is to determine whether good cause exists. *Am. Hom. Assur. Co*., 2004 U.S. Dist. LEXIS 19135 at *5 (finding that the third-party

Here, given that the period to amend expired in September 2021 (ECF No. 35), the Court reviews Capital One's motion under the "good cause" standard. Plaintiff only opposes the motion based on futility and delay, and tangentially argues prejudice. (ECF No. 154.) The undersigned considers each of the parties' arguments below.

## DISCUSSION

### I.    Proposed Addition of the Alter Ego and Fraud Claims
### A.    Delay

Defendant argues that it was diligent in making this motion (ECF No. 151), while Plaintiff maintains that Defendant had the documents in question in its possession as early as 2015 and waited months after Ross's and Becker's depositions before filing the motion to amend (ECF No. 154). [5]

A court may deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, *and* the amendment would prejudice other parties." *Grace v. Rosenstock,* 228 F.3d 40, 53-54 (2d Cir. 1999) (*citing Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.").

Even years after the discovery deadline has passed, courts have nevertheless granted leave if the circumstances so warranted. *See, e.g., Rachman Bag Co. v. Liberty Mut. Ins. Co*., 46

---

adjuster could be joined under Rule 20 since defendant's claims against the third party "ar[o]se out of the same constellation of facts as its claims against the original plaintiff").

[5] For instance, Plaintiff alleges that Capital One had the Letter of Intent for 245 Old Country Road LLC since October 2015—nearly 5 years before the action was commenced. (ECF No. 154 at 12.) Further, the agreement for 244 Lansdowne Avenue that was executed by Ross has been in Capital One's possession since February 2018. (*Id*. at 13.) Plaintiff avers that "Capital One had most, if not all, of the relevant documents and information in its possession when it filed its motion." (*Id*. at 14.)

F.3d 230, 235 (2d Cir. 1995) (affirming district court's decision to grant leave to amend despite four-year delay although plaintiff did not offer a reason for delay but central issue in case changed throughout the litigation); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514 (PAC) (HBP), 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to amend despite delay of at least six months and noting that "courts frequently grant leave to amend after much longer periods of delay").  However, "[c]ourts will find that a party has not acted diligently where the proposed amendment is based on information the party knew, or should have known, in advance of the motion deadline" and therefore must provide an explanation for the delay.  *N.Y. SMSA Ltd. P'ship v. Town of Hempstead,* No. 10-CV-4997 (AKT), 2013 U.S. Dist. LEXIS 37833, at *12 (E.D.N.Y. Mar. 19, 2013); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *Johnson v. Barnett Outdoors, LLC,* No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *5 (W.D.N.Y. Nov. 20, 2023) (noting that the burden of showing diligence rests on the party seeking to amend).

Here, there was no delay and even if there were, it was negligible.  Defendant had taken Becker's and Ross's depositions in October and November 2022.  In December 2022, Defendant then notified Plaintiff of its intent to move for leave to amend its counterclaims, given the information unearthed from the depositions.  However, Plaintiff appears to have stymied Defendant from doing so, asking for a redlined copy of the amended counterclaims and later stating that it would not consent to the proposed changes, including the dismissal of the two counterclaims.  The parties also engaged in good faith settlement negotiations shortly prior to Defendant's filing of the instant motion.  Therefore, Defendant acted promptly and swiftly in moving to amend its counterclaims once it confirmed Ross's and Becker's involvement in the fraud.  *Cf. Johnson*, 2023 U.S. Dist. LEXIS 208011 at *8 (denying plaintiff's motion to amend

partially because he failed to explain the new information prompting his motion and why "he can *only now* add to his complaint") (emphasis in original).

Further, Plaintiff maintains that Defendant could have moved to file its Amended Counterclaims when it got ahold of those discovery documents (ECF No. 154 at 12-13); however, this would not have been fruitful for Defendant. Claims of fraud carry with them a heightened pleading requirement; this means that Defendant had to be armed with robust information to lodge claims against Ross and Becker. Indeed, it was only the depositions that could have equipped them with such ammunition in order for Capital One to know the full extent of Ross and Becker's knowledge of Plaintiff's fraud. *See e.g.* ECF No. 152-2 at 25-27 (stating that Becker and Ross admitted to various schemes of fraud). Defendant waited until the depositions to confirm their suspicions and formulate the proposed amended counterclaim. *See Villafane v. City of New York*, No. 19-CV-1379 (EK) (SJB), 2021 U.S. Dist. LEXIS 112781, at *6 (E.D.N.Y. June 15, 2021) ("Courts have consistently recognized that if a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to name new parties based on such facts, leave to amend is appropriate.") (quoting *Port Auth. Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, No. 15-CV-3526, 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2016)) (finding good cause to amend since party sought to substitute detective as a party the day after the deposition and there was no articulated prejudice to opposing party); *cf. Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *5 (W.D.N.Y. Nov. 20, 2023) (finding that plaintiff did not act diligently since he "knew or should have known" of the information for his proposed amendments "long ago").

Thus, the undersigned finds that Capital One did not unduly delay in filing its motion to amend.

## B. Undue Prejudice

Defendant states that "no prejudice will occur if these individual defendants are added because no additional discovery is needed, adding them will not impact the trial date or the current scheduling order, and the claims arise from acts that the members were already aware of when 6340 [NB]…was sued." (ECF No. 151 at 6.) Further, Becker and Ross were put on notice that Capital One intended to file for leave to amend the counterclaim after their depositions were taken. (*Id.* at 24.)

Prejudice to the nonmoving party is the most important factor in determining whether to grant a leave to amend and is often the "most frequent reason for denying leave to amend." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008). However, it is only *undue* prejudice that would justify denial of a plaintiff's leave to amend. *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016). When considering whether the opposing party may be prejudiced, the opposing party must demonstrate that the new claim would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; (3) prevent the plaintiff from bringing a timely action in another jurisdiction; or (4) whether the opposing party was on notice of the new claim. *Alicea v. City of New York*, No. 16-cv-07347 (JLR), 2023 U.S. Dist. LEXIS 93318, at *7, 13 (S.D.N.Y. May 30, 2023). Notably, courts have found that "the longer the period of an unexplained delay," however, "the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

Here, all considerations counsel toward a finding of no prejudice. *First,* Defendant states that no additional discovery is needed. *Second,* the addition of these defendants will not delay

resolution of the case especially since summary judgment and trial dates have not been set.

*Third*, there is no indication that 6340 NB is prevented from bringing an action in another

jurisdiction.  And *finally,* Defendant indicates that Ross and Becker *were* on notice about these

claims being brought against them when they testified about their fraudulent acts.  (ECF No.

177); *see Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 232 F.R.D. 169, 173

(S.D.N.Y. 2004) (finding that proposed amendments will not require "substantial additional"

discovery since the new claims were premised on essentially the same facts as the original

claim).  Notably, Plaintiff also concedes that there is minimal prejudice, if at all.  (*See* ECF No.

154 at 16 n.4) (stating that a motion to amend can still be denied on other grounds even if

prejudice to non-movant is minimal).

 For these reasons, the undersigned finds that Defendant's amendment would not be

prejudicial.

### C.  Futility

 Although Defendant appears to have overcome the delay and prejudice prongs, the

futility factor points in a far different direction.

 "One appropriate basis for denying leave to amend is that the proposed amendment is

futile."  *Lucente v. IBM,* 310 F.3d 243, 258 (2d Cir. 2002); *see also In re Curaleaf Holdings, Inc.*

*Sec. Litig.,* 519 F. Supp. 3d 99, 111 (E.D.N.Y. Feb. 15, 2021) ("[A] court need not grant leave to

amend if amendment would be futile.").  An amendment is futile if the proposed claim could not

withstand a motion to dismiss under Rule 12(b)(6).  *IBEW Local Union No. 58 Pension Trust*

*Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  The

Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662

(2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion

to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).  The Court looks to the claims below with this framework in mind.

### a.  Proposed Count XVI: Alter Ego Liability
#### i.  Legal Standard

Capital One seeks to pierce the corporate veil on an alter ego theory of liability.  (*See* ECF No. 151 at 21.)  Treating the corporation as the "alter ego" of a shareholder or director is just one of the theories in which a court can pierce the corporate veil or otherwise hold the individual defendant personally accountable for the corporation's actions or debts.  *Highcap Grp. LLC v. Jam Equities,* No. 655120/2017, 2022 N.Y. Misc. LEXIS 1445, at *17 (N.Y. Sup. Ct. Mar. 21, 2022).  Additionally, New York courts and courts in this Circuit have found that under New York law, the tests for piercing the corporate veil and alter ego liability are the same.  *See Noryb Ventures, Inc. v. Mankovsky,* No. 650378/2009, 47 Misc. 3d 1220(A) (N.Y. Sup. Ct. May 7, 2015) (stating that the applicable standards for piercing the corporate veil and alter ego theories of recovery "are virtually identical")*; see also Kaliner v. Mt. Vernon Monetary Mgmt. Corp.*, No. 07-cv-4643 (LMM), 2008 U.S. Dist. LEXIS 67456, at *7 n.4 (S.D.N.Y. Sept. 3,

2008) ("The tests for piercing the corporate veil and alter ego liability are equivalent under New York law.").

New York law requires that "[t]he party seeking to pierce a corporate veil bears the heavy burden of showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Skanska USA Bldg. Inc. v. Atlantic Yards B2 Owner, LLC*, 40 N.Y.S.3d 46, 54 (N.Y. App. Div. 1st Dep't 2016) (internal citations omitted); *see also Emigrant Bus. Credit Corp. v. Hanratty*, No. 158207/2022, 2023 N.Y. Misc. LEXIS 3207, at *8-9 (N.Y. Sup. Ct. June 29, 2023) (citing same requirements where plaintiff sought to pierce the corporate veil on an alter ego theory of liability).  Complete domination is "the key to piercing the corporate veil" but cannot stand alone, as there must be "some showing of a wrongful or unjust act toward the party seeking piercing." *Morris v. State Dep't of Taxation & Fin.,* 623 N.E.2d 1157, 1161 (N.Y. 1993).

New York courts have looked at the following factors when determining whether veil-piercing is warranted:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Shisgal v. Brown*, 801 N.Y.S.2d 581, 584 (N.Y. App. Div. 1st Dep't 2005).  "No one factor is dispositive" to determine domination.  *Fantazia Intl. Corp. v. CPL Furs N.Y., Inc.* 889 N.Y.S.2d

28, 29 (N.Y. App. Div. 1st Dep't 2009). And piercing the corporate veil involves a "heavy burden" for the plaintiff. *Town-Line Car Wash, Inc. v. Don's Kleen Mach. Kar Wash, Inc.*, 95 N.Y.S.3d 227, 229 (N.Y. App Div. 2d Dep't 2019).

6340 NB compares itself to a closely held corporation. (ECF No. 154 at 32.) A closely held corporation exists where "the shares…are not traded on a national securities exchange or regularly quoted on an over the counter market." *WMW Mach. v. Werkzeugmaschinenhandel GmbH IM Aufbau*, 960 F. Supp. 734, 746 n.9 (S.D.N.Y. 1997). Courts do tend to be more flexible when closely held corporations are involved, when considering whether there has been a disregard of the corporate formalities. *See Vivir of Li, Inc. v. Ehrenkranz*, 997 N.Y.S.2d 670 (N.Y. Sup. Ct. Suff. Cty. 2014) ("While the Court acknowledges that Julian Boylan exercised dominion and control over the entity, such is…common in closely held corporations [and] is simply not sufficient to [pierce the corporate veil.");  *see also Cohen v. Schroeder,* 248 F. Supp. 3d 511, 522 (S.D.N.Y. 2017) (discussing courts' hesitancy in courts in "find[ing] a disregard of the corporate form when closely-held corporations are involved").

### ii. Application to the Facts

Capital One alleges that Ross and Becker "treated 6340 [NB] as nothing more than their alter ego," which allows the corporate veil to be pierced. (ECF No. 151 at 21.) Capital One states that at their depositions, Ross and Becker conceded the following:

- 6340 NB has no "financial statements, operating statements, balance sheets, accounting records, board minutes, officers, employees, or offices" but instead has a single asset (*id.* at 22);

- 6340 NB is undercapitalized which is evident from the fact that Ross and Becker pay bills using personal funds nor is there a proper accounting to keep track of the corporation's funds. (*Id.*) Relatedly, the company's assets were treated the same as Ross's and Becker's. (*Id.*)

6340 NB states that, contrary to Capital One's allegation, Becker's deposition testimony revealed that 6340 NB has an operating agreement and maintains a bank reconciliation statement. (ECF No. 154 at 31.) 6340 NB further alleges that it is more akin to a closely held company and need not have rigidly complied with corporate formalities. (*Id*.) Further, Plaintiff states that Becker and Ross *lawfully* put in personal funds to pay company expenses—not the other way around, i.e. company funds were not used for personal expenses. (*Id*. at 32.) Plaintiff also avers it is not undercapitalized because 6340 NB owns several properties which are worth millions of dollars. (*Id*. at 32.) Even so, undercapitalization is insufficient, without anything else, to pierce the corporate veil. (*Id*.)

Notably, Capital One only responds that these arguments are improper at the pleadings stage and are better suited for summary judgment. (ECF No. 155 at 10.)

According to the proposed counterclaims, Count XVI (Alter Ego Liability Against Ross and Becker) alleges: (1) that 6340 NB is "nothing more than [Ross's and Becker's] alter ego"; (2) "Ross and Becker entirely disregarded the corporate form through their lack of employees, officers, directors, physical offices, minutes, and books and records as to corporate activities, and by their other acts and omissions;" (3) 6340 NB is undercapitalized and Ross and Becker often "shuttl[e] in…their personal funds" into 6340 NB's accounts; and (4) Ross and Becker allegedly controlled and dominated 6340 NB to enter into deals dishonestly with Capital One, causing Capital One was harmed as a result of Ross's and Becker's actions. As a result, Ross and Becker should be deemed personally liable for any monies that 6340 NB is deemed liable. (ECF No. 152-2 ¶¶ 230-36.)

Here, because Ross and Becker "have deposited capital into [6340 NB's accounts] to pay some of its debts and obligations" (ECF No. 152-2 at 38), this does not mean that they siphoned

money *out* of the business accounts.   (*See e.g.* ECF No. 152-4 at 465) (Ross Deposition Excerpts on 11/9) ("Richard Becker has paid for funds and [Ross has] paid for funds.")  In fact, the proposed Amended Counterclaims do not allege anything to that effect nor has Becker and Ross admitted to the same in their depositions.  Thus, there is scant evidence that Ross and Becker used company funds for their personal use.

However, the fact that 6340 NB needed Ross's and Becker's personal funds to survive is telling.  Still, undercapitalization alone is insufficient to pierce the corporate veil, so the inquiry does not end here.  *Petal & Co. Prods. LLC v. Norwood Consulting Grp. LLC*, No. 654766/2022, 2024 NYLJ LEXIS 134 (N.Y. Sup. Ct. Jan. 18, 2024) ("[U]ndercapitalization alone is not sufficient to warrant a finding of individual liability."); *Xuchang Rihetai Human Hair Goods Co. v. Hanyu Int'l USA Inc*., No. 00-CV-5585 (DLC), 2001 U.S. Dist. LEXIS 11186, at *28 (S.D.N.Y. Aug. 7, 2001) ("Without other evidence of wrongdoing," undercapitalization "is an insufficient basis…to pierce the corporate veil under New York Law.").

Notwithstanding the above, 6340 NB cannot simply ignore corporate formalities.  6340 cites to *Music Mix Mobile LLC v. Newman (In re Stage Presence, Inc.)*, 592 B.R. 292 (Bankr. S.D.N.Y. Oct. 26, 2018).  However, its reliance on *Music Mix Mobile* is misplaced.  This case involved an entity named Stage Presence, Inc. and plaintiffs, which provided its services to assist with a benefit concert operated by Stage Presence.  *Id*. at 295.  The court found that defendant Newman, sole owner, was *not* personally liable for the debts that the company owed plaintiffs. *Id*. at 297, 301.  Plaintiffs alleged that Newman "caused Stage Presence to acquire services and goods from the plaintiffs."  *Id*.  Particularly relevant, is that plaintiffs also alleged that corporate formalities did not exist between Stage Presence and Newman.  *Id*.  However, the *Music Mix Mobile* court found that although Stage Presence did not have formal director or shareholder

meetings for a period of time, it "always retained counsel to provide legal advice and accountants to assist with bookkeeping and financial questions." *Id*. at 303. Further, the entity "filed all of its required tax returns and maintained its corporate franchise" and "kept its own separate books and records." *Id*. Thus, the court found that absence of directors and meetings was a "sign of sloppiness" rather than disregard for the corporate form. *Id*. at 304. Notably, this was decided in a bench decision after trial, not on a pleadings motion.

Similarly, following a jury trial, the court in *Vivir of Li, Inc. v. Ehrenkranz*, 997 N.Y.S.2d 670 (N.Y. Sup. Ct. Suff. Cty. 2014) decided the issue of whether the corporate veil should be pierced. It found that the defendants failed to demonstrate that piercing was warranted. It noted, *inter alia*, that although Boylan, the corporation's owner, exercised dominion and control, the company was equipped with bank records and QuickBooks to demonstrate loans provided. *Id*. And, although the company did not maintain distinct bank accounts, expenses were listed separately in its accounting files. *Id*.

Unlike Stage Presence in *Music Mix Mobile* and the entity in *Vivir*, 6340 NB only states in a conclusory manner that it has an operating agreement and maintains a reconciliation to the bank statement. But this is not enough, and 6340 NB fails to adequately rebut Capital One's claims. There is no indication that 6340 NB hired counsel or accountants to assist with bookkeeping or separately filed tax returns in the company's name. Nor is there any mention of an accounting software such as QuickBooks used by 6340 NB to house its financial data. Rather, it appears that Ross and Becker, as the only employees and managers of 6340 NB, made all executive decisions, including those associated with the alleged fraud. Relatedly, as discussed below, Capital One details Ross's and Becker's involvement with the fraud and breach of contract, which injured Capital One. *See Rotella v. Derner*, 723 N.Y.S.2d 801, 802 (N.Y.

App. Div. 4th Dep't 2001) ("A plaintiff is not required to plead or prove actual fraud in order to pierce the corporate defendant's corporate veil, but prove only that the individual defendant's control of the corporate defendant was used to perpetrate a wrongful or unjust act.").

On balance, Capital One sufficiently pleads a plausible claim to justify adding alter ego claims for the individuals. That said, New York courts do not recognize alter ego liability claims as a stand-alone independent cause of action.[6] Consequently, it is recommended that Capital One's request to add an "alter ego claim" against Ross and Becker be denied. Nevertheless, it is also recommended that Capital One's request to add Ross and Becker as counterclaim-defendants to the *existing* claims is granted. Capital One should be afforded the opportunity re-file its counterclaims asserting the factual allegations only with respect to an alter ego theory and removing any mention of Count XVI from the document. *Hart v. Jassem,* 843 N.Y.S.2d 121, 123 (App. Div. 2d Dep't 2007) (dismissing the veil piercing cause of action, since New York courts do not recognize it as a separate cause of action, but granting leave to replead factual allegations in an amended complaint related to veil piercing).

**b. Proposed Counts XIV and XV: Fraud Claims**
    **i. Are the Fraud Claims Duplicative of the Breach of Contract Claim?**

Capital One cannot maintain the fraud claims against Ross and Becker because they are duplicative of its breach of contract claim against 6340 NB. Capital One alleges that Becker and Ross:

---

[6] *Winchester Global Trust Co. Ltd. v. Donovan*, 880 N.Y.S.2d 877 (N.Y. Sup Ct. Nassau Cty. 2009) (stating that "the piercing of a corporate veil is not a cause of action independent of that against the corporation [but] is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners"); *9 E. 38th St. Assoc., L.P. v George Feher Assoc., Inc*., 640 N.Y.S.2d 520 (N.Y. App. Div. 1st Dep't 1996) ("[A] separate cause of action to pierce the corporate veil does not exist independent from the claims asserted against the corporation.") (citing *Morris v. State Dep't of Taxation & Fin*., 623 N.E.2d 1157 (N.Y. 1993)).

- Misrepresented that they owned the 245 Old Country Road parcel and even signed letters of intent on behalf of a bogus entity in several documents (ECF No. 151 at 17-18);

- Obtained a phony buyer to purchase the adjacent parcels; these parcels were then to be transferred to Capital One (*Id.* at 18);

- Formed fake contracts with homeowners who sold their property to 244 Landsowne LLC entity—another fictitious entity unbeknownst to Capital One (*Id.* at 18-19);

- When Ross and Becker did admit that 244 Landsowne LLC was fake, they assured Capital One that the contract between them was still valid and that 6340 NB had genuinely acquired the rights to purchase the land.  (*Id.* at 19);

- On multiple occasions, 6340 NB requested an extension of time from Capital One to rezone the property but surreptitiously proceeded to list 245 Old Country Road for sale which 6340 NB planned to sell to someone else other than Capital One.  Neither Capital One nor that potential buyer knew of the agreement between 6340 NB and Capital One (*Id.* at 19-20);

- Becker falsely affirmed that he owned three adjacent properties although he had no such rights to these properties (*Id.* at 20);

- Ross also allegedly told Capital One that all tenants would vacate 245 Old Country Road by April 2019.

Generally, "[i]t is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Sekisui Am. Corp. v. Hart*, No. 12-cv-3479 (SAS), 2012 U.S. Dist. LEXIS 150283, at *8 (S.D.N.Y. Oct. 17, 2012).  A plaintiff must distinguish the fraud claim from a breach of contract claim by "(1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages."  *Id.; see also Poplar Lane Farm LLC v. The Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempted to repackage them as sounding in

fraud . . . are generally precluded, unless based on a duty independent of the contract."); *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (dismissing plaintiff's fraud claim when "fraud allegations are nothing more than a restatement of its breach of contract claim").  As is relevant here, "where damages arising from a fraud claim are identical to those damages resulting from a breach of contract, courts have dismissed fraud claims as duplicative of breach of contract claims."  *Clement v. Farmington Cas. Co*., No. 13-cv-1026 (NSR), 2015 U.S. Dist. LEXIS 152221, at *18 (S.D.N.Y. Nov. 10, 2015).

However, a fraud claim is *not* duplicative of a breach of contract claim if it is brought against a non-party to the contract.  *See Advance Knowledge Tech., LLC v. Fleitas*, No. 21-cv-992 (PKC), 2021 U.S. Dist. LEXIS 247723, at *7 (S.D.N.Y. Dec. 28, 2021) (denying defendant's motion to dismiss fraud claim as duplicative of the breach of contract claim because the claim was asserted against an individual who was not a party to the contract); *Exch. Listing, LLC v. Inspira Techs., Ltd.,* 661 F. Supp. 3d 134, 157 (S.D.N.Y. 2023) (recognizing that the fraud claim was brought against non-parties to the oral contract).  Crucial to plaintiff's bringing a claim against a non-party to a contract is that the plaintiff must assert that the non-party's representations that are "separate and distinct" from the company's obligations under the operating agreement.  *Forty Cent. Park S. Inc. v. Anza*, 14 N.Y.S.3d 11, 12 (N.Y. App. Div. 1st Dep't 2015) (finding the individual fraud claim adequately pled and not duplicative of the contract claim against the company because of the separate representations that were made).  In other words, "the alleged misrepresentation must be distinct from merely representing the party's intent to perform under the contract."  *Exch. Listing, LLC*, 661 F. Supp. 3d at 158.  If the non-party's representation is that the party will perform under the contract, courts have found such claims to be duplicative.  *Id.*

The court in *Exch. Listing, LLC* acknowledged that the alleged misrepresentations by the non-party Hayon, namely, that the company Inspira would perform, was made in Hayon's representative capacity and "related solely to Inspira's obligations under the Oral Contract." *Id.* at 159. The court ultimately found that plaintiff did not identify a *separate* harm caused by Hayon nor did plaintiff point to any statements made in an individual capacity. *Id.*

Like the situation in *Exch. Listing, LLC,* both Ross and Becker appear to have made fraudulent statements connected to 6340 NB's *performance* of the contract. *See Cole, Schotz, Meisel, Forman & Leonard, P.A. v. Brown,* 972 N.Y.S.2d 21, 22 (N.Y. App. Div. 1st Dep't 2013) (dismissing fraudulent inducement claim against individual defendants for falsely promising to pay as duplicative as "not collateral to the contract for legal services entered into between plaintiff and the corporate defendant").

*First,* Ross's and Becker's allegations that the tenants would vacate 245 Old Country Road is patently related to the alleged misrepresentation that 6340 NB stated no one occupied the property. (*See e.g.* ECF No. 152-3 at 13) (Ross Deposition Excerpt on 11/8) (detailing terms of the lease relating to vacating the tenants and the alleged misstatement). *Second,* 6340 NB's efforts to acquire the parcels and obtain rezoning approvals is inextricably linked to the allegations that Ross falsely executed agreements to obtain 244 Lansdowne Avenue on behalf of 244 Lansdowne LLC. Capital One maintains that 6340 NB's failure to buy the parcel was a material breach of their contract. (*See e.g.* Ross Deposition Excerpt on 11/8 at 19) ("Q: So as part of the ground lease with Capital One, 6340 NB agreed to acquire two of the residential properties, one was on 10 Byrd Avenue and the second one was on 244 Lansdowne, correct? A: Yes."). *Finally,* Capital One also alleges that neither 6340 NB nor Ross and Becker informed them that they were engaging in discussions with other entities. (ECF No. 151 at 19-20.) This

was also an obligation under the signed lease agreement.  (Ross Deposition Excerpt on 11/8 at 28) ("Q: Is there a provision that says…that if you enter into an agreement, that's inconsistent with the rights of the parties, that you would advise Capital One of that? A: I am not aware of it. Q: Okay. Well maybe your counsel can show it to you."); (*see also* ECF No. 152-5 at 67) (Becker Deposition Excerpts) (reciting section 5.1 of the ground lease stating that 6340 NB was to notify Capital One of any misrepresentations or incorrect warranties, which would have included notifying Capital One about discussions concerning listing a property for sale with other entities).

The foregoing reasons alone would be sufficient to deny Capital One's request to add the fraud claims, but it is also worth noting that the relief sought from 6340 NB and Ross and Becker are identical—Capital One seeks damages of $200,000 from both—another basis for denying the proposed claim.  (ECF No. 152-2 ¶¶ 114, 142, 148, 155, 158, 221, 227); *see Clement,* 2015 U.S. Dist. LEXIS 152221 at *18. (discussing that courts dismiss duplicative fraud claims if damages are identical to the breach of contract claim).

Accordingly, since the proposed fraud claims against Ross and Becker are duplicative of the breach of contract claim against 6340 NB, the undersigned recommends that the motion to add those claims should be denied.  *See Ross Pods. Div. Abbott Labs. v. Saper*, No. 06-3264 (LDW), 2007 U.S. Dist. LEXIS 105230, at *9-11 (E.D.N.Y. Mar. 28, 2007), *report and recommendation adopted by* 2007 U.S. Dist. LEXIS 31647 (Apr. 26, 2007) (finding that plaintiff sufficiently pled its fraud claims in accordance with Rule 9(b) but ultimately denied those claims that were duplicative of its breach of contract claim); *cf. Remcoda, LLC v. Ridge Hill Trading (PTY) Ltd.,* No. 21-cv-979 (RER), 2023 U.S. Dist. LEXIS 52079, at *45 (S.D.N.Y. Mar. 27, 2023) (declining to dismiss the fraud claim as duplicative against non-party to the contract partly

24

because plaintiff sought separate damages not recoverable via a breach of contract claim). Thus, it is recommended that, despite the lack of delay and undue prejudice, Capital One's request to add alter ego liability and fraud claims against Ross and Becker be denied based on futility.

### ii.  Are the Proposed Fraud Counterclaims Timely and Sufficiently Pled?

In the event that the District Judge disagrees that the proposed fraud counterclaim is duplicative of the breach of contract counterclaim, the undersigned alternatively finds that the proposed claim is timely and Capital One has sufficiently pled the elements.

Under New York law, "the statute of limitations for a fraud claim is the greater of six years after accrual or two years from when it could have been discovered with reasonable diligence," which is also known as the "discovery rule." *Delaware County v. Leatherstocking Healthcare,* 973 N.Y.S.2d 817, 820 (N.Y. App. Div. 3d Dep't 2013) (citing N.Y. C.P.L.R. § 213(8)).

6340 NB argues that the statute of limitations for the fraud claims have since passed since Capital One had possession at least one of the documents since 2015 and the motion to amend was only filed on February 21, 2023. (ECF No. 154 at 16.) Upon the undersigned's review of the operative counterclaims, there was no prior indication that Ross and Becker were involved with the scheme. Indeed, the counterclaims only briefly mention Ross and Becker, discussing the 244 Lansdowne LLC and that the tenants that failed to vacate the premises. (ECF No. 89 ¶¶ 33, 52) (citing emails from 2018 discussing the fake corporation and lack of vacancy); *see Verschleiser v. Frydman*, No. 22-cv-7909 (JGK), 2023 U.S. Dist. LEXIS 158963, at *15-16, 22-23 (S.D.N.Y. Sept. 7, 2023) (finding the fraud claims were time-barred because plaintiff detailed the fraud scheme in the complaint, which was filed years prior to the motion to amend).

Capital One had at least one document in its possession since 2015—one that Ross himself had signed concerning 245 Old Country Road. However, that letter did not indicate any

facts constituting fraud let alone any indication that 245 Old County Road LLC never existed. *See CSAM Capital, Inc. v. Lauder*, 885 N.Y.S.2d 473, 478-79 (N.Y. App. Div. 1st Dep't 2009) (finding that prior circumstances would not have caused the appellants to infer fraud and the fraud could not have been discovered even with reasonable diligence). The mere non-existence of this entity would have had no bearing on the extent of Ross and Becker's actual involvement in the fraud. For these reasons, the statute of limitations has not expired since Defendant only discovered the facts necessary to formulate its proposed amended counterclaims and promptly moved to amend shortly thereafter.

As to the merits of the fraud claims, Capital One alleges that it has clearly established all fraud elements. (ECF No. 155 at 13-14.) 6340 NB, however, argues Capital One lacks justifiable reliance in raising these claims now since it had access to the documents before and could have done its due diligence in confirming the requested information and had a duty to disclose the missing pieces to the puzzle. (ECF No. 154 at 24, 26, 28.)

Under New York law, the elements of a fraud claim are "a material misrepresentation of a fact; knowledge of its falsity; an intent to induce reliance; justifiable reliance by the plaintiff; and damages." *Eurycleia Partners, LP v. Seward & Kissel LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). And where, as here, the movant seeks to hold a corporate officer or director liable for fraud, a movant must show that the individual "personally participate[d] in the misrepresentation, or has actual knowledge thereof." *Verrino Constr. Servs. Corp. v. AMG-NYC LLC*, No. 151461/2014, 2015 N.Y. Misc. LEXIS 433, at *8 (N.Y. Sup. Ct. Feb. 20, 2015).

Capital One plausibly alleges fraud against Ross and Becker here. Capital One points to misrepresentations or omissions by Ross and Becker demonstrating an intent to defraud or otherwise keep the agreement alive, which resulted in damages to Capital One. Notably, 6340

NB *only* challenges the justifiable reliance element of the fraud claims.  Contrary to 6340's assertions, Capital One was *not* required to search every public record to determine whether each of these phony entities indeed existed.  *See* 1 Business Torts § 9.11 ("Constructive notice of the truth (or lack thereof) … that is found in public records is not a defense to fraud….[A] plaintiff is under no duty to seek out public records.  However, the existence of such public records may be relevant to whether the plaintiff's reliance was justifiable.").  Further, as stated above, the documents would not have indicated any fraudulent misconduct on its face.  Thus, even if Capital One could have checked public records or had possession of related documents, 6340 NB needed to first conduct depositions to fully understand the extent of Ross's and Becker's knowledge of and involvement with the alleged fraud.  For these, the undersigned alternatively finds that the proposed fraud counterclaim is timely and sufficiently pled.

## II.      Removal of Counts II and X

Defendant seeks to withdraw its two claims for against Plaintiff.  Plaintiff does not oppose.  (*See* ECF No. 154 at 9 n.2) ("6340 [NB] does not oppose the withdrawal of Counts II and X of Capital One's previously amended counterclaims.") Therefore, the undersigned recommends that branch of Defendant's renewed motion which seeks to remove the aforementioned claims be granted.

<u>**CONCLUSION**</u>

For the reasons stated, the undersigned recommends that Capital One's renewed motion to amend its Counterclaims (ECF Nos. 150 and 177) be granted in part and denied in part.  That is, Capital One's request to add the fraud and alter ego counterclaims is denied.  However, it is recommended that Capital One's request to add Ross and Becker as counterclaim-defendants on

the existing causes of action is granted. Further, Capital One's request to remove Counts II and X should be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.

Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).


Dated: Central Islip, New York
         March 11, 2024

                                                    S O   O R D E R E D:

                                                    /S/ *James M. Wicks*

                                                    JAMES M. WICKS
                                                    United States Magistrate Judge