UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
6340 NB LLC,

               Plaintiff,                                      **MEMORANDUM & ORDER**

      -against-                                             2:20-cv-02500-OEM-JMW

CAPITAL ONE N.A., *et al.*,

               Defendants.
------------------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

For four years, Plaintiff 6340 NB LLC ("Plaintiff" or "6340 NB") and defendant Capital One, N.A.'s ("Defendant" or "Capital One") have been embroiled in litigation arising out of an agreement to build a bank branch on four parcels of land located in Carle Place, New York. *See generally* Complaint ("Compl."), ECF 1. Presently before the Court is Capital One's renewed motion to amend its counterclaims against 6340 NB.[1]

In February 2023, Capital One moved for leave to file its proposed Second Amended Counterclaims ("SAC"), ECF 152-1. *See* Capital One's Motion to Amend (the "Motion to Amend" or "Mot."), ECF 150; Capital One's Renewed Letter Motion to Amend ("Renewed Motion"), ECF 177.[2] In the SAC, Capital One seeks to (1) dismiss and/or rescind from its first amended counterclaims Count II[3] and Count X[4]; (2) add standalone fraud claims against new

---

[1] Capital One has amended its Counterclaims once before. *See* Capital One, N.A.'s Answer and Amended Affirmative Defenses to the Amended Complaint, with Amended Counterclaims, ECF 89.
[2] The Motion was initially briefed and filed on February 21, 2023, nearly 18 months after the deadline to amend the pleadings had passed. R&R at 5; *see* ECF 150-155. However, Magistrate Judge Wicks denied the motion without prejudice to renew based upon the parties' desire (at that time) to have a settlement conference, which was held but not fruitful. Capital One was granted the opportunity to renew the Motion, which it took. In its Renewed Motion, Capital One stated it "stands on its Motion as briefed and renews its request to join individuals Richard Becker and David Ross as counterclaim defendants." Renewed Motion at 1.
[3] Count II alleges "Fraud in the Inducement-Fraudulent Misrepresentations and Concealment and Representations and Warranties: Rescission of Agreement." SAC ¶¶ 115-130
[4] Count X alleges "Breach of Contract-Reduction in Size of Bank Branch."

1


individual defendants Richard Becker ("Becker") and David Ross ("Ross"), who are members and co-managers of 6340 NB. The Motion to Amend was referred to Magistrate Judge Wicks, who issued a report and recommendation on March 11, 2024 (the "R&R"), ECF 199. The R&R recommends that (1) Capital One's Motion to Amend be granted with respect to dismissing Counts II and X, (2) granting the Motion to Amend insofar as Becker and Ross should be added as counterclaim-defendants on the existing causes of action asserted against 6340 NB; and (3) denying the Motion to Amend to the extent Capital One seeks to add new individual fraud counterclaims against Becker and Ross on the grounds that the fraud claims would be futile as duplicative of the contract claims. R&R at 1-2, 27-28; *see* SAC ¶¶ 217-22 (Count XIV: adding standalone fraud claim against Ross), ¶¶ 223-28 (Count XV: adding standalone fraud claim against Becker).

Capital One timely filed limited objections to the R&R taking issue only with the R&R's conclusions that the additional counterclaims sounding in fraud and alter ego could not be maintained against Ross and Becker. *See* Capitol One's Objections to R&R ("Defs' Obj."), ECF 201. 6340 NB filed an opposition to Capitol One's limited objections. *See* 6340 NB's Opposition to Capital One's Objections, ("Pl's Opp."), ECF 202. For the following reasons, Magistrate Judge Wicks' is R&R **ADOPTED** in full, Defendants' objections are **OVERRULED**, and the Motion to Amend is **GRANTED in part** and **DENIED in part** consistent with the R&R.

## BACKGROUND

The Court assumes familiarity with the parties, facts, and issues involved in this action which have been repeatedly recited throughout the course of this litigation. Thus, the Court recites only the facts required to resolve the instant Motion. "This case arises out of Plaintiff 6340 NB LLC's and Defendant Capital One's agreement to build a bank branch on four parcels of land

located in Carle Place, New York." R&R at 1. 6340 NB's managing members are the proposed individual defendants Becker and Ross.

"To set forth the terms of the parties' expectations and bargain, on December 4, 2017, Capital One and Developer [*i.e.,* plaintiff 6340 NB] entered into the Agreement (the 'Agreement')[5] for the acquisition, assemblage, rezoning construction and, ultimately, leasing of a Capital One bank branch at 245 Old Country Road, 249 Old Country Road, 10 Byrd Avenue, and 244 Lansdowne Avenue, in Carle Place, New York (the 'Premises')." SAC ¶ 9.

"To induce Capital One to enter into the Agreement, [6340 NB] agreed to and made numerous express, material representations and warranties about both the Premises and [6340 NB's] authority to control" 245 Old Country Road. SAC ¶ 23. "Among those express material representations and warranties, [6340 NB] represented and warranted . . . that at the time of the Agreement's execution, (1) the Premises were free and clear of all leases which would prevent Capital One from operating its bank branch; (2) no other party had any rights to the [245 Old Country Road] in any respect; (3) the obligations of [6340 NB] under the Agreement did not constitute a default under any other contract; (4) the Agreement is not inconsistent with any contract to which [6340 NB] is a party or by which it is bound; and (5) [6340 NB] was not obligated under any contract, lease, or agreement with respect to the ownership, use, operation, or maintenance of the Premises." SAC ¶ 24 (citing Section 5.1 of the Agreement). Additionally, under the Agreement, 6340 NB "was obligated to acquire" certain parcels which included 244 Lansdowne Avenue. SAC ¶ 49, *id.* ¶ 7. Under the Agreement, 6340 NB was required "to rezone and acquire the parcels by April 3, 2018." SAC ¶¶ 33, 29.

---

[5] The Agreement is itself is formally entitled as a "Ground Lease" and referred to as such by the parties in the R&R and by the parties. *See* ECF 42-1. For the sake of clarity, however, the Court adopts Capital One's use of the term "Agreement."

3

"As the April 3, 2018, deadline approached, [6340 NB] asked Capital One to extend the deadlines of its obligations to perform by giving [6340 NB] a few extra weeks—until April 30, 2018—to acquire the remaining parcels and apply for rezoning." SAC ¶ 36. Capital One acquiesced to this extension ("the First Extension"). SAC ¶ 38.

Throughout the end of 2018 and into January 2019, the parties engaged in discussions to amend the Agreement a second time to allow 6340 NB more time to perform its obligations. SAC ¶¶ 44, 55-56. As some point, the parties agreed to and executed a second amendment to the Agreement (the "Second Amendment") in which Capital One extended 6340NB's time to perform for another 16 months until August 31, 2020. SAC ¶¶ 56, 80-83.

However, the arrangement between Capital One and 6340 NB began unraveling after a January 22, 2020, town hall meeting in which various material inconsistencies were aired out in front of Capital One representatives. SAC ¶¶ 66, 72. The town board rejected 6340 NB's rezoning application. SAC ¶ 67. Capital One thereafter "determined to exercise its termination rights under the Agreement." SAC ¶ 78. On January 31, 2020, Capital One notified [6340 NB] that it was terminating the Agreement for its failure to meet the deadlines for acquisition and re-zoning under the Agreement." SAC ¶ 79. 6340 NB responded by sending a Notice of Default to Capital One. SAC ¶ 89. Ultimately, this litigation followed. 6340 NB filed suit in this district against Capital One in this district "arguing that Capital One never intended to proceed with the agreement and often caused delays progressing with the project, thus frustrating 6340 NB's ability to perform." R&R at 1. "Capital One, in turn, asserted a host of counterclaims alleging essentially that 6340 misled Capital One into believing it was genuinely performing." *Id.*

As discovery progressed, including the taking of Ross and Becker's depositions, "Capital One learned that 6340 NB did not maintain the proper corporate documentation; namely, it did not

keep any books and records, employees, corporate officers, or financial statements, and was undercapitalized." R&R at 4. Moreover, Capital One became aware of various other alleged misrepresentations and omissions made by the Becker and Ross in what they now allege to independent acts of fraud. These revelations spurred Capital One to leave to amend its counterclaims to add Ross and Becker and to explicitly allege fraud claims against them. *See id.* at 6, 10.

Capital One's fraud claims at center of the instant Motion focus on two sets of allegedly fraudulent conduct committed by Ross and Becker.

### A. 6340 NB's Alleged Purchase of 244 Lansdowne Avenue

Capital One alleges that 6340 NB "represented to Capital One that it could acquire parcels it did not own (some of which were commercial and others residential), assemble them together, rezone them, and subsequently prepare all the parcels that would allow the development into a bank branch which land assemblage it would deliver to Capital One for the construction . . ." SAC ¶ 7. One of these parcels 244 Lansdowne Avenue, a zoned residential parcel. SAC ¶ 18.

On February 8, 2019, 6340 NB "—through Ross and Becker—convinced the owners of 244 Lansdowne Avenue to agree to sell their property to '244 Lansdowne LLC.'" SAC ¶ 49. "244 Lansdowne LLC agreed to pay certain money to the owners of 244 Lansdowne Avenue and to perform certain other obligations should the parcels get rezoned." *Id.* "The 244 Lansdowne Avenue homeowners, in turn, consented to the sale of their property to 244 Lansdowne LLC and agreed, at the buyer's request, not to object to any rezoning application pertaining to their property." *Id.* "In conjunction with these representations, Ross signed the purchase agreement as a 'Member' of 244 Lansdowne LLC." SAC ¶ 50. "Both Becker and Ross admit, however, that

no such entity existed then or has ever existed. Ross misrepresented himself as a [m]ember of a company that did not exist." SAC ¶ 50.

"[O]n February 13, 2018, Ross wrote to Capital One and informed its agent in charge of the lease transaction that it had 244 Lansdowne Avenue under contract." SAC ¶ 52. "Both Becker and Ross, however, knew this was a false representation and that the purchaser, '244 Lansdowne, LLC,' did not exist." *Id*. Capital One, "with no knowledge that that 244 Lansdowne LLC did not exist, agreed to enter into an extension [referred to as the Second Extension] with [6340 NB] to give it more time to perform under the Agreement." *Id*. Capital One alleges that had "it known that 244 Lansdowne LLC did not exist and that after two years, [6340 NB] still did not lawfully have 244 Lansdowne Avenue under contract, it would have terminated the Agreement and never entered into any further amendments to the Agreement." *Id*. Capital One's SAC thus alleges 6340 NB's "failure to contract to buy or acquire the 244 Lansdowne Avenue parcel was in material breach of the Agreement, which required [6340 NB] to acquire each of the four adjoining parcels, re-zone the Residential Parcels, and provide the Premises to Capital One for construction of a bank branch." SAC ¶ 60. However, it also claims that Ross and Becker as members of 6340 NB, "personally knew about and participated in the acts described above, including the fraudulent actions against Capital One. These actions and omissions included (but are not limited to) signing a Letter of Intent with Capital One on behalf of an entity which did not exist, signing a purchase contract with the owners of 244 Lansdowne Avenue as 'Member' of an entity which did not exist and has never existed (thus rendering the contract void and unenforceable) . . . purposefully hiding all such acts and omissions from Capital One so as to induce Capital One to perform under the Agreement and grant [6340 NB] extensions which Capital One would not have otherwise granted." SAC ¶ 219 (asserting fraud claim against Ross); *id.* ¶ 225 (asserting fraud claim against Becker).

### B. Outside Negotiations to Sell 245 Old Country Road to Another Buyer

Capital One also alleges that Becker and Ross committed fraud when they "told Capital One that . . . [6340 NB] had been performing its obligations under the Agreement all along when, in reality, from June 2018-February 2019, [6340 NB], Ross and Becker had been attempting to sell 245 Old Country Road out from underneath Capital One." SAC ¶ 82; *see* Defs' Obj. at 18. 245 Old Country Road is one of the commercial parcels subject to the Agreement that was 6340 NB was obligated to acquire and prepare for Capital One to build the branch. *See* SAC ¶¶ 7, 15.

"Undisclosed to Capital One, Ross and Becker caused [6340 NB] to enter into a brokerage agreement with CBRE [a commercial real estate firm] in June 2018 (which Becker signed, just two months after [6340 NB] received its first extension to perform) and listed the Developer Parcel for sale at an asking price of $4.5 million." SAC ¶ 40. 6340 NB "and CBRE thereafter entertained multiple offers for the [245 Old Country Road] and engaged in multi-week negotiations with a prospective retailer, [iFly] exchanging multiple letters of intent as to the terms of conveying the [245 Old Country Road] to this retailer for its own specific use." SAC ¶ 40. "In short, [6340 NB] was attempting to sell [245 Old Country Road]out from underneath Capital One, even though the Agreement was ongoing and even though the Agreement obligated [6340 NB] to assemble [245 Old Country Road], together with its three adjacent parcels, for Capital One's bank branch." SAC ¶ 40. Capital One further alleges that "Ross and Becker caused [6340 NB] to conceal purposefully from Capital One that, despite being obligated to use [245 Old Country Road] as part of a bank branch, [6340 NB] instead was attempting to sell the property to a third party for an unrelated use and was prepared to convey the [245 Old Country Road] to this third party if offered the price it sought." SAC ¶ 41. "Not only was this inconsistent with [6340 NB's] obligations and

7

Capital One's rights under the Agreement, it would also have frustrated the entire bargain and Capital One's expectancy thereunder." SAC ¶ 40.

### C. Magistrate Judge Wicks' Report and Recommendation

In addressing Capital One's proposed addition of the fraud and alter ego claims, Magistrate Judge ("MJ") Wicks concluded that the claims were timely and accrued only negligible delay. *See* R&R 9-12. He further concluded that 6340 NB would not suffer undue prejudice to add Becker and Ross as individual defendants. *Id.* at 12. In reviewing Capital One's proposed SAC, MJ Wicks also concluded that, "[o]n balance, Capital One sufficiently pleads a plausible claim to justify adding alter ego claims for" Ross and Becker. R&R at 20; *see id.* at 14-20 (analysis). However, MJ Wicks recommended that, because New York law does not allow for a standalone "alter ego claim," any such request by Capital One should be denied and, instead, "Capital One's request to add Ross and Becker as counterclaim defendants to the *existing* claims" should be granted. R&R at 20 ("Capital One should be afforded the opportunity refile its counterclaims asserting the factual allegations only with respect to an alter ego theory and removing any mention of Count XVI from the document.") (emphasis added).

Turning to whether the proposed independent fraud claims against Becker and Ross could be maintained, MJ Wicks concluded that such claims would be "timely and sufficiently pled" under the heightened Rule 9(b) pleading standard. R&R at 27; *see id.* at 25-27. However, he later concluded that asserting new fraud claims against Ross and Becker would be duplicative of the breach of contract claims levied against 6340 NB. R&R at 20-25. MJ Wicks reasoned that the situation before the Court was analogous to another district court case, *Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 157 (S.D.N.Y. 2023). Like in *Exch. Listing*, even though Ross and Becker were technically non-parties to the Ground Lease agreement, "both Ross and

8

Becker appear to have made fraudulent statements connected to 6340 NB's *performance* of the contract."  R&R at 20-23 (emphasis in original).  MJ Wicks found the pair's alleged frauds "inextricably linked" to the Agreement.  *See id.*  Accordingly, MJ Wicks' recommended that the fraud claims would not survive a motion to dismiss as they were duplicative as a matter of law to the contract claims already alleged.  *Id.* at 24.  In coming to this conclusion, MJ Wicks also noted that "relief sought from 6340 NB and Ross and Becker are identical—Capital One seeks damages of $200,000 from both—another basis for denying the proposed claim."  *Id.* at 24 (citing *Clement v. Farmington Cas. Co.*, 13-CV-1026 NSR, 2015 WL 6971565, at *7 (S.D.N.Y. Nov. 10, 2015)).

## STANDARD OF REVIEW

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3).  In reviewing a report and recommendation, the district court "may adopt those portions of the report to which no objections have been made and which are not facially erroneous." *Romero v. Bestcare Inc.*, 15-CV-7397 (JS), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017); *see also Impala v. U.S. Dep't of Justice*, 670 F. App'x 32, 32 (2d Cir. 2016) (summary order) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").  "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339-40 (S.D.N.Y. 2009) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006)).

The district court must review *de novo* "those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected

9

to"). To obtain *de novo* review, an objecting party "must point out the specific portions of the [R&R]" to which it objects. *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016). Pursuant to Federal Rule of Civil Procedure 72(b)(2), such objections must be served and filed "[w]ithin 14 days after being served with a copy of the recommended disposition." *See also* 28 U.S.C. § 636(b)(1).

As a threshold hold issue, the Court agrees that *de novo* review is appropriate here because the R&R's recommendation to deny the addition of the individual fraud claims on futility grounds is dispositive of that claim. *See Domni v. Cnty. Of Nassau*, 19-CV-00083 (JMA) (LGD), 2022 WL 16950055, at *1 (E.D.N.Y. Nov. 14, 2022) (reviewing *de novo* the denial of a motion to amend "[f]or the avoidance of doubt"); *see also Lashley v. Sposato*, 13-CV-6343 (JMA) (SIL), 2016 WL 406351, at *1 n.1 (E.D.N.Y. Feb. 2, 2016) ("[D]enial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility"), *report and recommendation adopted*, Order (Feb. 19, 2016).

## DISCUSSION

### A. Withdrawal of Counts II and X from the Second Amended Counterclaims

As an initial matter, the Court adopts MJ Wicks' recommendation that Counts II and X of Capital One's Amended Counterclaims be dismissed against Plaintiff. R&R at 27. As the R&R noted, 6340 NB did not oppose the withdrawal. *Id.* Similarly, Capital One raised no objection to that portion of the R&R on appeal. *See generally* Pl's Obj. Accordingly, the Court **ADOPTS** that portion of the R&R and **DISMISSES** Counts II and X from the operative Amended Counterclaims.

### B. Addition of Fraud Counterclaims Against Ross and Becker.

Capital One only objects to one specific finding and recommendation in the R&R, "namely, that the Bank's fraud counterclaims against Ross and Becker are futile because they are duplicative

of the Bank's breach of contract claims against 6340 [NB]." Defs' Obj. at 1. 6340 NB agrees that this is the sole issue that needs to be addressed on review. Pl's Opp. at 1-2.

### 1. Legal Standards for Leave to Amend and Futility of Amendment

"When a party requests leave to amend his complaint, permission generally should be freely granted." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citing *Foman v. Davis,* 371 U.S. 178 (1962); Fed. R. Civ. P. 15(a)(2)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182 (citing Fed. R. Civ. P. 15).

However, "[l]eave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citations omitted); *see also In re Curaleaf Holdings, Inc. Sec. Litig.,* 519 F. Supp. 3d 99, 111 (E.D.N.Y. Feb. 15, 2021) ("[A] court need not grant leave to amend if amendment would be futile.").

"The adequacy of a proposed amended complaint to state a claim is to be judged by the same standards as those governing the adequacy of a filed pleading[,]" *i.e.* a motion to dismiss under Rule 12(b)(6) subject to the *Iqbal/Twombly* pleading standard.[6] *Anderson*, 680 F.3d at 185;

---

[6] Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir.2000). In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

11

*see IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, 18-CV-01692(ADS)(AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted).

### 2. Whether Fraud Claims Against Becker and Ross Are Duplicative of Breach of Contract Claims against 6340 NB.

It is well established that under New York law,[7] "[a] cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract . . . ." *Geo Grp., Inc. v. Cmty. First Servs., Inc.*, 11-CV-1711 CBA, 2012 WL 1077846, at *7 (E.D.N.Y. Mar. 30, 2012) (quoting *MTA v. Triumph Adver. Prods., Inc.,* 116 A.D.2d 526 (App. Div. 1986)) (quotation marks omitted). "The mere allegation that 'a defendant did not intend to perform a contract with a plaintiff when he made it' generally fails to state a claim for fraud, however, and will be dismissed as duplicative under New York law." *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001) (citation omitted). "The rationale for this rule is that a party need not be expressing an unconditional intention to perform by contracting, and may instead be expressing an intention either to perform or suffer the ordinary contractual consequences for a breach." *Id.*

However, New York law does recognize some factual scenarios where a party may maintain a claim for fraud in tandem with a breach of contract claim. As explained by the Second Circuit a plaintiff must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable

---

[7] The parties agree that New York law applies here.

12

as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir. 1996) (quotation marks omitted); *see also 110 East Realty LLC v. Rydan Realty, Inc.*, 210 A.D.3d 513, 514 (1st Dep't 2022) (reciting same).  Additionally, "a fraud claim may proceed despite a parallel breach-of-contract claim if the party against whom the fraud claim is asserted was not a party to the contract." *Kairam v. W. Side GI, LLC*, 18-CV-1005 (AT) (SDA), 2024 WL 139569, at *3 n.6 (S.D.N.Y. Jan. 12, 2024), *reconsideration denied*, 18-CV-1005 (AT), 2024 WL 2853598 (S.D.N.Y. June 5, 2024); *see Exch. Listing*, 661 F. Supp. 3d at 157 (S.D.N.Y. 2023) ("[A] plaintiff may separately state a claim for fraud against a non-party to a contract that would otherwise be barred as duplicative of a breach of contract claim against a party to the contract").

A crucial aspect of the law that governs inquiry here of whether fraud claims here may stand alone or are merely duplicative of contract claims, is the fact that New York law draws a "key distinction" between claims that assert a "misrepresentation of *present* fact," which is actionable as fraud, and "a misrepresentation of *future intent* to perform under the contract," which merges with the contract claim and thus cannot support a separate fraud claim.  *Exch. Listing*, 661 F. Supp. 3d at 156 (citing *Gosmile, Inc.* v. *Levine*, 81 A.D.3d 77, 915 N.Y.S.2d 521, 524 (1st Dep't 2010)) (emphases added); *accord Advanced Knowledge Tech, LLC v. Fleitas*, 21-CV-992 (PKC), 2021 WL 6126966, at *2 (S.D.N.Y. Dec. 28, 2021); *see also Mañas v. VMS Assocs., LLC*, 53 A.D.3d 451, 453–54 (1st Dep't 2008) (internal citations omitted).

As explained by New York courts, where the "the alleged representations were not expressions of future expectations," they cannot "sustain a fraudulent inducement cause of action." *Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 168 (1st Dep't 2015).  However, "a misrepresentation of *present* fact, unlike a misrepresentation of future intent to perform under the contract, is collateral to the contract, even though it may have induced the plaintiff to sign it,

13

and therefore involves a separate breach of duty." *Id.* (quoting *GoSmile*, 81 AD3d at 81) (emphasis added); *Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 NY2d 954, 956 (N.Y. 1986) (A "mere promissory statement as to what will be done in the future" is not actionable but "a representation of present fact . . . which was the inducement for the contract" is actionable as fraud).

Capital One raises a host of objections to the R&R. First, Capital one argues that because Becker and Ross were non-signatories to the Agreement the proposed fraud claims cannot be duplicative. Defs' Obj. at 10-11. Second, Capital One contends that Ross and Becker's misrepresentations and omissions were collateral to contract and actionable as present misstatements of fact. Defs' Obj. 12-21. Third, Capital One contends that Magistrate Judge Wicks' misapplied *Exchange Listing* in concluding that the fraud claims were duplicative. Defs' Objs. 21-24. Fourth, that Magistrate Judge Wicks relied on material misrepresentations not at issue in determining whether the Capital One stated a fraud claim. Defs' Obj. 24-25. However, upon the Court's *de novo* review of the SAC, the Court finds that the maintenance of individual fraud claims against Becker and Ross would be duplicative of the breach of contract claim against 6340 NB.

As an initial matter, the fact that Becker and Ross were themselves not signatories to the Agreement does not *ipso facto* allow fraud claims to proceed in breach of contract actions. "[W]here the alleged misrepresentation is simply a representation by a non-party that the party will in fact perform under the contract (*i.e.*, a representation made on behalf of the contracting party), courts have found fraud claims to be duplicative, even as against the non-party." *Exch. Listing*, 661 F. Supp. 3d at 158. "This distinction makes sense. Otherwise, plaintiffs could sue the corporation (who was a party to the contract) for breach of contract, and then bring a separate

14

suit for fraud against the individual who represented the corporation, thereby bringing duplicative fraud and breach of contract claims." *Id.* (quotation marks omitted). Here, MJ Wicks already found that Becker and Ross were acting as the "alter egos" [8] of their legal entity, 6340 NB. *See also Bridgestone/Firestone, Inc.*, 98 F.3d at 19; *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 503 (S.D.N.Y. 2017). The Court also concludes that Becker and Ross were therefore acting in a representative capacity of 6340 NB when it perpetrated the alleged frauds and the fact that they did not sign the Agreement is not a basis for allowing fraud claims against them. As such Capital One's argument is without merit.

The crux of this matter, then, is whether the conduct that underlies the two purported frauds, which took place after the signing of the Agreement, was simply part and parcel of 6340 NB's intent to allegedly not ultimately perform under the Agreement or independently actionable as alleged misrepresentations of present fact which somehow invoked a separate duty collateral or extraneous to the Agreement. Capital One's argument naturally rests on the latter theory. In Capital One's view, both of the alleged frauds – the presentment of a "fake contract" for the sale of 244 Lansdowne and undisclosed attempt to side-sell 245 Century Road to iFly – were misrepresentations and/or omissions of present facts that Ross and Becker were not already obligated to disclose and that were made solely to extract *new* considerations from Capital One than they initially bargained for in the Agreement, namely "and *gaining more time to perform under the Agreement*." [9] Defs' Obj. at 17 (emphasis added). Put simply, these alleged frauds were

---

[8] Again, Capital One does not object this finding in the R&R. *See* Defs' Obj. at 25.
[9] Capital One argues that Becker and Ross's alleged frauds were also undertaken to "altering the Bank's termination rights" under the Agreement. Defs' Objs. at 17. Capital maintains that when Becker and Ross undertook these frauds, they "were really attempting to convince Capital One to alter its termination rights "Defs' Obj. at 3, 19. However, no such corresponding allegation is made in the SAC. Indeed, Capital One exercised its termination rights in January 2018 by sending a notice 6340 NB. SAC ¶¶ 78-79. Capital One subsequently unilaterally offered to rescind those rights in June 2020. *Id.* ¶ 92. Afterwards, 6340 NB allegedly "refused to recognize Capital One's willingness to rescind." *Id.* ¶ 93. Capital One states that "[e]ven as recent as July Capital One told [6340 NB] that it considers its termination notice rescinded, but [6340 NB] refuses to perform or mitigate its alleged damages." *Id.* As these

15

perpetrated by Becker and Ross to buy the pair (acting as 6340 NB) more time to either (a) perform the essential obligations under the Agreement – to rezone and prepare four parcels into a single deliverable parcel suitable for a bank branch – or (b) get off the proverbial pot by selling 245 Country Road for a $4.5 million windfall, in direct contravention of their duties under Agreement. And for this simple reason, the fraud claims must fail as duplicative as they are necessarily related to and not collateral or extraneous to the Agreement.

It is undisputed that Becker and Ross took these two fraudulent actions *after* executing the Agreement and that Capital One did agree to extending the time to perform after being told about the sale of 244 Lansdowne. And, in a concrete sense, the production of the "fake contract" to Capital One was the representation of present fact, *i.e.*, an explicit (and false) statement of present ownership over property, rather than an explicit representation by Becker and Ross about their future intentions. However, to accept this independent actionable fraud would be too granular a view of the doctrine and gut the rationale of dismissing duplicative claims, which is to avoid duplicative recoupment of damages without proving an additional duty or actionable extraneous fraud. *Thorsen v. Cnty. of Nassau*, 722 F. Supp. 2d 277, 289 (E.D.N.Y. 2010) ("There is clear authority that trial courts should avoid providing a plaintiff with duplicative recovery on intertwined causes of action").

Here, without the Agreement in place in *ab initio*, there is no reason established in the SAC for Becker and Ross to have lied about having secured the sale of for 244 Lansdowne Ave or conceal their breach of the Agreement when they attempted to sell 245 Country Road to iFly. The totality of the allegations in the SAC establish that Becker and Ross, acting as 6340 NB, undertook

---

allegations demonstrate, any alteration of Capital One's the termination rights arose out of Capital One's own decisions, not any action by Becker, Ross, or 6340 NB. Thus, the Court only considers the additional consideration extracted from Capital One as the extensions of time to perform.

these misrepresentations not to extract anything new of value from Capital One besides more time to "either to perform or suffer the ordinary contractual consequences for a breach." *VtechHoldings Ltd.*, 172 F. Supp. 2d 435, 439 (S.D.N.Y. 2001). In sum, "[i]t would be absurd to find that such a fraud claim did not derive directly and wholly related to the Agreement." *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F.Supp.2d 147, 163 (E.D.N.Y. 2012).

Perhaps most telling here is the fact that Capital One's SAC does allege or even allude to special or unique damages it suffered by the perpetration of these fraudulent acts separate and apart from the damages they already seek for under a breach of contract theory. Capital One alleges it "has spent tens of thousands of dollars in hiring engineers, architects, and other professionals to draw (and re-draw) the Site Plan and prepare for construction of its branch. Capital One has also spent numerous hours working with [6340 NB] to perform its end of the Agreement's obligations. It has also suffered significant damage in lost business opportunity." SAC ¶ 97. However, there are no facts alleged establishing that Capital One would not have had to incur these costs had 6340 NB performed on time absent the extensions nor that any purported loss of potential business is anything more than speculative. *Cf. Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (N.Y. 2017) ("Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."). Further, Capital One, the party carrying the burden of futility, does not establish that it cannot recover for these costs under the Agreement. *See e.g.*, *Empire Outlet Builders LLC v. Construction Resources Corp. of New York*, 170 A.D.3d 582 (1st Dep't 2019) ("Regardless of whether plaintiff sufficiently alleged breach of a duty independent of the Subcontractor Agreement, the fraud claim is duplicative because plaintiff will be fully compensated via the contract claim").

Moreover, "[w]here damages arising from a fraud claim are identical to those damages resulting from a breach of contract, courts have dismissed fraud claims as duplicative of breach of contract claims." *Clement*, 2015 WL 6971565, at *7 (citing *Coppola v. Applied Elec. Corp.,* 288 A.D.2d 41, 42, 732 N.Y.S.2d 402 (1st Dep't 2001)); *see, e.g.*, *Triad International Corp. v. Cameron Industries, Inc.*, 122 A.D.3d 531, 531-532 (1st Dep't 2014) ("Plaintiff's fraud claim against Khayyam is duplicative of its contract claim against defendant Cameron Industries, Inc., since plaintiff seeks the same compensatory damages for both claims."); *Chowaiki & Co. Fine Art Ltd. v. Lacher*, 115 A.D.3d 600, 600-601 (1st Dep't 2014) (holding that even if a party sufficiently alleges a duty independent of the contract, the fraud claim is "redundant" of the "breach of contract claim" where "it also seeks the same damages."). Here, the amount of damages sought is the same for the proposed fraud counterclaims. *See* Pl's Opp. at 21 (citing SAC ¶¶ 221, 227); *see* SAC ¶¶ 114, 148, 155, and 168 (alleging same damages for breach of contract counterclaims against 5340 NB).

Lastly, the fact that Capital One seeks the additional equitable relief of recission of the Second Amendment as alleged in Count II of the SAC does not change the outcome. Capital One alleges in Count II that "Capital One is entitled to a declaration rescinding the Second Amendment to the Agreement so that Capital One is placed in the position it would have been had [6340 NB] not fraudulently induced Capital One to enter into the Second Amendment." SAC ¶ 130. However, even if Capital One is granted recission, it does not change the fact that it still otherwise seeks to maintain individual fraud claims against Ross and Becker at Counts XIV and XV in parallel with breach of contract claims at Counts I, V, VI, and VIII. And, as just explained, these claims are duplicative.

18

As the Court independently finds upon *de novo* review of the R&R that Capital One's fraud claims are duplicative as a matter of law to the breach of contract claims, it does not address the remainder of Capital One's objections.

### C. Remainder of the R&R

Having reviewed the remainder of the R&R, to which no party objects, the Court adopts the remainder of the R&R as it finds no clear error. Specifically, the Court adopts the recommendation that Ross and Becker be added as defendants and that leave to amend may be granted in part only as to name Ross and Becker as counterclaim defendants on the existing causes of action remaining. *See* R&R at 27.

### CONCLUSION

For the reasons set forth above, Magistrate Judge Wicks' is R&R **ADOPTED** in full, Defendants' objections are **OVERRULED**, and the Motion to Amend is **GRANTED in part** and **DENIED in part** consistent with Magistrate Judge Wicks' Report and Recommendation.

**SO ORDERED.**

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated: September 5, 2024
Brooklyn, New York

19